HARRY SANDERSON *v.* BOB'S COASTER CORPORATION

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued May 7—decided June 12, 1947

*David M. Reilly* and *David Goldstein,* with whom, on the brief, was *Edwin A. Levere,* for the appellant (defendant).

*Philip Reich,* for the appellee (plaintiff).

ELLS, J. The plaintiff was injured while riding as a passenger in a train operated by the defendant on its roller coaster located at Savin Rock in West Haven, and brought this action to recover damages. He alleged that his injuries were due to the negligence of the defendant in that it failed to use reasonable care to maintain the apparatus in a reasonably safe condition and failed to make proper inspection of it and to take proper precautions for the protection of its patrons. The jury returned a verdict for the plaintiff, and the defendant has appealed from the denial of its motion to set it aside, and because of numerous rulings on evidence.

The propriety of the court's refusal to set aside the verdict is to be tested by the evidence most favorable to the plaintiff. The jury reasonably could have found the following facts: On August 12, 1944, and for a long time prior thereto, the defendant maintained and operated at Savin Rock a roller coaster known as "The Thunderbolt." A train of eight cars is operated on two steel tracks. The cars are joined together by a ball and socket joint. Each car consists of one seat, thirty inches wide, in which two people may sit snugly. The train leaves the loading station, goes down a slight grade, makes a left turn through a tunnel, and then metal hooks or "dogs" underneath the cars engage in a conveyor chain of heavy metal which hauls the train to the top of the first grade, the high point of the entire structure. At or near the

top each car is released from the chain, and when the rear car has been released the train proceeds down the first dip and runs to the end of the ride on its own momentum. The chain is engaged in the motor house of the coaster by a sprocket gear turned by an electric motor and forms an elongated loop with an over-all length of about four hundred and forty feet. It is constructed of cast steel and malleable iron. When the chain is in proper condition and unworn, the dogs under the cars and the sprockets of the gear in the motor house engage the chain smoothly, so that the cars are carried to the top of the first incline and released without any jerk. Outside of the motor house, as the chain goes up the incline it runs in a metal trough about six inches deep, passes over four idlers at the top of the riser and is returned to the motor house in a metal trough which runs under the tracks. In normal operation the chain is covered with a dark, greasy lubricant and as it runs its course produces considerable noise, which has a steady, regular sound. When a chain of this character is excessively worn, the noise produced is loud and irregular and there is a periodic slapping noise which is readily distinguishable from the sound produced by an unworn chain. This is owing to the fact that, as the chain wears, it increases in length and slack is created. The wear is gradual, and the length of the chain and the slapping noise increase gradually. Excessive slack in the chain produces periodic jerking of the cars because of the failure of the dogs under the cars to engage properly in the chain and the failure of the chain to mesh properly with the teeth of the sprocket gear. When the slack in such a chain becomes excessive, the roller coaster is not reasonably safe.

On August 12, 1944, at about 10:30 p.m., the plaintiff and two male friends paid the stipulated fare and boarded a train of the Thunderbolt. The two friends occupied the seat of the first car and the plaintiff that of the second car. He took hold of the safety bar with both hands and continued to hold on to it until the injury occurred. The train started on the ride and was carried to the top of the first rise by the chain; just as it passed over the top there was a violent jerk of the car which raised the plaintiff from his seat, threw him back forceably against the back of it and fractured his second lumbar vertebra.

An expert produced by the plaintiff testified that on the evening of Friday, August 18, from a point seventy-five feet away from the roller coaster, he watched it in operation for a period of forty-five minutes and paid particular attention to the sound of the chain and the other mechanism and equipment of the Thunderbolt. He saw cars jerk on their way up the incline and said that this was due to excessive slack caused by wear and that the irregular noise which he heard was caused by the same condition. It was his opinion that the roller coaster was not reasonably safe at the time he observed it, and that it had been in an unsafe condition for at least two weeks. The defendant produced an expert whose firm had designed this particular roller coaster. His opinion was directly contrary to that of the plaintiff's expert. Apparently the jury adopted the opinion given by the latter, and under ordinary circumstances their finding could not be disturbed upon appeal. "Ordinarily it is the exclusive function of a jury to determine whether they will believe or disbelieve the testimony of witnesses, and, however mistaken a

court may think they are, it cannot override their conclusion. . . . But that conclusion may be so unreasonable that it will constitute an error in law, and where such a situation exists it is the duty of the court to interfere." *Koops* v. *Gregg,* 130 Conn. 185, 191, 32 A. 2d 653. The defendant contends that the testimony of the plaintiff's expert was unworthy of belief because it was based wholly upon his observation of the operation of the coaster while standing seventy-five feet away. The jury may well have believed that the expert, who had had fourteen years' experience in the operation of similar roller coasters, was qualified to express the opinions which he gave, based, as they were, upon what he saw and heard from a vantage point even seventy-five feet away.

The defendant pleaded contributory negligence on the part of the plaintiff, and assumption of risk. Both are based on the claim that he did not make proper use of the hand bar. There was credible evidence to the contrary, and in its brief the defendant has made only perfunctory reference to these claims.

There is no error in the denial by the trial court of the motion to set aside the verdict.

Error is assigned in thirty-one rulings made by the trial court in admitting the evidence of the plaintiff's expert. Most of the objections appearing in the finding are not pressed in the brief. Certain of the claims advanced in argument before us were not made to the trial court. We do not consider objections to evidence which the finding does not show were made when it was offered. Conn. App. Proc., p. 61, note 33. We have already answered the principal contentions of the defendant in its brief, that the witness offered by the plaintiff to give opinion evidence was not qualified as an expert and that his ob-

servation made from a point seventy-five feet away was an insufficient basis upon which to give an opinion. "The underlying principle is that if any reasonable qualifications can be established, the objection goes to the weight rather than to the admissibility of the evidence." *Wray* v. *Fairfield Amusement Co.,* 126 Conn. 221, 224, 10 A. 2d 600; 2 Wigmore, Evidence (3d Ed.) § 561. We find no reversible error in any of the rulings.

There is no error.

In this opinion the other judges concurred.