## STATE OF CONNECTICUT *v.* JOHN GRAYTON

HOUSE, C. J., RYAN, SHAPIRO, LOISELLE and FITZGERALD, Js.

Argued March 10—decided May 11, 1972

*Raymond J. Quinn, Jr.,* public defender, for the appellant (defendant).

*Francis M. McDonald,* state's attorney, for the appellee (state).

LOISELLE, J. The defendant was charged with possession of heroin, in violation of § 19-481 (a) of the General Statutes, and transporting and possessing narcotics with intent to sell and dispense to another person, in violation of § 19-480 (a) of the General Statutes. A jury returned a verdict of guilty on both charges. From the judgment rendered thereon and the denial of the defendant's motion to set aside the verdict, he has appealed.

The defendant's first claim of error is directed to the affidavit in support of the application for a search warrant, the search warrant and the return. It may be noted that none of these documents is in the finding or record. It is apparent, however, that the granting of the motion included in the record, entitled "motion to enlarge record on appeal," in which the defendant moved that the trial court include these documents in the file on appeal, was intended to make them a part of this record and we so consider it.

The attack on the sufficiency of the affidavit is without merit. The affidavit, sworn to by two veteran detectives, states in substance the following: A known and reliable informant, who had produced evidence leading to three convictions involving narcotics, told the affiants that heroin was being kept at and sold from a designated apartment occupied

by the defendant and his girl friend, Ann Powell; the informant saw the defendant sell heroin and saw a large quantity of heroin in the apartment; the affiants saw three persons enter the apartment while the defendant and Ann Powell were present; the three persons stayed about five minutes; one of the three persons was a self-admitted addict; another reliable informant, whose information in the past has led to two convictions involving narcotics, related that the defendant was engaged in the business of selling heroin; this informant observed the defendant selling heroin from a described vehicle on a particular day; the described vehicle was registered to the defendant.

The defendant concedes that the information in support of the application for a warrant to search the described apartment was sufficient, but claims that insufficient facts were recited in the affidavit to support a search of the motor vehicle.

The principles by which we test the adequacy of an affidavit have been designed to insure that a disinterested judicial officer make his own common-sense judgment that there is probable cause for the issuance of the warrant. *Spinelli* v. *United States,* 393 U.S. 410, 415, 89 S. Ct. 584, 21 L. Ed. 2d 637; *Aguilar* v. *Texas,* 378 U.S. 108, 110–11, 84 S. Ct. 1509, 12 L. Ed. 2d 723; *State* v. *Jackson,* 162 Conn. 440, 444, 294 A.2d 517. *Aguilar* v. *Texas,* supra, 114, states the standard for determining whether an affidavit containing hearsay is sufficient for such an independent judgment: The magistrate must be informed of (1) some of the underlying circumstances relied on by the informant, and (2) some of the underlying circumstances from which the affiant could conclude that the informant was credible or his information reliable. There is no doubt

that the affidavit set out such circumstances. An informant saw the defendant make a sale from a car bearing a specified registration number. The police traced the registration number and found that it belonged to the defendant. Another informant saw the defendant make a sale at another location. Both informants were known to the affiants and considered reliable; both had previously given information which led to the conviction of violators of narcotics laws. See *State* v. *Jackson,* supra.

The defendant claims that the search warrant was defectively executed because the return for and inventory of property seized on the warrant did not recite that the police officers searched the defendant's apartment and found nothing. The return and inventory listed in the return conformed with the requirements of General Statutes § 54-33c.[1] General Statutes § 54-33c is clear and unambiguous. We see no requirement in the statute that a police officer on the return of a search warrant recite his activities while making the search or describe any more than what he seized and where he seized it.

Prior to the time of trial the defendant, on motion for discovery, received a copy of the arresting officer's report. The report is in the nature of a form with spaces for name, address, offense, location of offense, date and time. The three remaining spaces are headed, "List physical evidence," "Custody of evidence" and "Describe arrest." The officer listed "Fifteen (15) Glassine Envelopes of White Powder.  (Heroin)" in the first space; "Special Service Division" in the second space; and, in the third space, recited that he and two other police officers had approached the defendant, who

---

[1] Public Acts 1971, No. 291, repealed the section and substituted provisions not relevant here.

was seated in a parked vehicle, told him they had a search warrant, searched him and the vehicle, found fifteen glassine envelopes in the trunk of the vehicle, arrested him, advised him of his rights, brought him to police headquarters and booked him. No other activities are recited in the report, except the confiscation of the vehicle and a field test of the white powder which showed it to contain heroin.

The defendant claims that the officer's omission of any reference to the unsuccessful search of the apartment and the conversation in the apartment with Ann Powell was a violation of his constitutional rights, citing *Brady* v. *Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215, and *Giles* v. *Maryland,* 386 U.S. 66, 87 S. Ct. 793, 17 L. Ed. 2d 737. Both of these cases hold that suppression by the prosecution of evidence favorable to an accused on request violates due process where the evidence is material either to guilt or to punishment. In the case at bar, the fact that a search of the defendant's apartment was unsuccessful had no exculpatory effect on the charges against him or the punishment for them. At the time of the search of the defendant's apartment, a police officer had a conversation with Ann Powell. That conversation, hereinafter alluded to in a different context, was in no way exculpatory; in fact, it could only have been harmful to the defendant. Further, the defendant was fully apprised, during the course of the trial, that the police found heroin only in his vehicle. The appendix to the defendant's brief also reveals that the defendant testified that Ann Powell had visited him after his arrest, that he received a letter from her, and that she had told him of the thorough search of the apartment.

Another claim of error of the defendant is the fail-

ure of the police to arrest Ann Powell in order to insure that she would be available to testify at his trial. This ground is not argued in the defendant's brief and is, therefore, considered abandoned. *State* v. *Benson,* 153 Conn. 209, 217, 214 A.2d 903; *State* v. *Harris,* 147 Conn. 589, 591, 164 A.2d 399. The other claims of error in denying the motion to set aside the verdict are without merit and do not warrant discussion.

The defendant argues that, as he was charged with crimes alleged to have been committed on December 8, 1969, it was error to admit in evidence testimony that, prior to the date of arrest, a police officer observed the defendant and Ann Powell entering their apartment, followed by Clifford Williams, a known heroin addict, who remained in the apartment about five minutes. This evidence was relevant to the count of possession with intent to sell and dispense narcotics to another person. Further, nowhere in the record is there any indication that an objection or exception was taken to any of this evidence. Consequently, it is not subject to review. *State* v. *Hawkins,* 162 Conn. 514, 517, 294 A.2d 584.

During his own direct examination, the defendant testified to the subject matter of a conversation, which he had overheard at police headquarters, between two police officers. The conversation concerned what one of the officers had heard from and said to Ann Powell and what he had observed while searching the apartment occupied by the defendant and Ann Powell. The state, on rebuttal, presented that police officer to testify as to what he said while in the presence of the defendant. The officer testified that, contrary to the defendant's claim, the conversation did not include any statement that heroin was found in the apartment. The conversation, accord-

ing to the officer, did include a statement that Ann Powell had stated that heroin, which had been removed from the apartment before the police search, belonged to the defendant. When this rebuttal testimony was given, the only comment by counsel was as follows: "Mr. Daly: If Your Honor pleases, I am not clear now as to whether we are relating a conversation with Ann Powell which would be hearsay and objectionable or whether we are relating a conversation that took place in the police station. Q. Relate the conversation of what you told Lieutenant Griffin." There was no further comment, objection or exception to the testimony of the police officer about this conversation at police headquarters. Even had an exception been taken, there would be no basis for the defendant's assigning the admission of the testimony as error.

If the state offered this testimony either in its case in chief or on rebuttal for the truth of the statement made, it would be inadmissible as hearsay evidence. *Obermeier* v. *Nielsen,* 158 Conn. 8, 11, 255 A.2d 819. As the defendant introduced this testimony in his case in chief, the state had a right on rebuttal to have the officer relate what he claims occurred, not for the truth of the statements made, but for the fact that they were not made as related by the defendant. *State* v. *Miller,* 154 Conn. 622, 629, 228 A.2d 136; *Gyro Brass Mfg. Corporation* v. *United Automobile Workers,* 147 Conn. 76, 80, 157 A.2d 241. The offer of this testimony for such a limited purpose is apparent from the question of counsel for the defendant and the state's limiting the testimony to the conversation at police headquarters. Thereafter, the record reveals no objection or exception by the defendant to this testimony. See *State* v. *Hawkins,* supra.

During the course of the trial the state offered evidence, through a lieutenant of police in charge of the special service division, whom it qualified as an expert, that a dealer in narcotics would possess a "half-load" of heroin, that a "half-load" is a common quantity used in the trafficking of heroin, and that heroin is brought from the city of New York to Waterbury in units of that size. The finding fails to show that any exception was taken to this testimony. We are, therefore, warranted in disregarding the error assigned. *State* v. *Hawkins,* supra. This aside, the defendant's contention is without merit. No lack of qualification of the expert witness is involved. The questions asked of the expert witness were designed to bring out the manner in which heroin was transported. This the state was entitled to do, in order to supplement the evidence it had previously introduced as to the intent of the defendant relative to the possession of the quantity of heroin seized from his vehicle. Because it cannot be assumed that these facts were common knowledge, this testimony was properly allowed to aid the jury in determining the questions in issue. *State* v. *Grosso,* 139 Conn. 229, 233, 93 A.2d 146; *Taylor* v. *Monroe,* 43 Conn. 36, 44; McCormick, Evidence (2d Ed.) § 13. As the witness qualified as an expert, any objection to his testimony would go to its weight rather than to its admissibility. *Sanderson* v. *Bob's Coaster Corporation,* 133 Conn. 677, 682, 54 A.2d 270; *Wray* v. *Fairfield Amusement Co.,* 126 Conn. 221, 224, 10 A.2d 600.

During the course of the argument, the state's attorney made some remark about trafficking heroin to teenagers. The following is the entire reference to this matter in the finding:

"Mr. Daly: If your Honor pleases, I didn't want

to interrupt counsel's argument but I think this is way beyond the evidence and is inflammatory and I move for a mistrial.

"Mr. McDonald: Your Honor, there is evidence of trafficking in heroin and there is evidence of teenagers in the country being destroyed.

"The Court: The jury is instructed to disregard the comments of Mr. McDonald with respect to the effects of heroin upon children.

"Mr. McDonald: I apologize, your Honor, if I went beyond the evidence but I don't think I mentioned children.

"The Court: Seventeen year old.

"Mr. McDonald: Seventeen year old.

"Mr. McDonald: I would ask this jury to do their job as a jury and convict this man of the crimes alleged. Thank you for your attention."

"The general principle is that a mistrial should be granted only as a result of some occurrence on the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial. *Izzo* v. *Crowley,* 157 Conn. 561, 565, 254 A.2d 904; *Ferino* v. *Palmer,* 133 Conn. 463, 466, 52 A.2d 433. The trial judge is the arbiter of the many circumstances which may arise during the trial in which his function is to assure a fair and just outcome. *State* v. *Marquez,* 160 Conn. 47, 52, 273 A.2d 689." *State* v. *Bausman,* 162 Conn. 308, 312, 294 A.2d 312. The court acted properly to protect the defendant's rights and it is apparent from an examination of the questions that the jury later asked the court, during their deliberations, that the defendant's rights were protected. The court's denial was well within its judicial discretion. *State* v. *Savage,* 161 Conn. 445, 449, 290 A.2d 221; *Teitelman* v. *Bloomstein,* 155 Conn. 653, 662, 236 A.2d 900; *Ferino* v. *Palmer,* supra.

In the course of the jury's deliberations, the following occurred in the presence of the jury:

"The Court: Members of the jury, I have received some interrogatories written by you through the sheriff, and one of them reads as follows: 'Was the idea of someone other than the police putting narcotics in the car brought out as evidence?' The answer is this: You, collectively, must remember and recollect the evidence which was brought out during the course of this trial. It is the court's recollection that there was no such evidence. However, it is your recollection of the evidence which controls.

. . . . .

"Mr. Daly: Your Honor, I would take one exception and that is this: In the answer to the first question, I believe that at that stage, with the questions propounded to the court, that it would not be proper for the court to state what his recollection of the evidence was, as it will be persuasive and possibly controlling in the minds of the jury."

It may be noted that counsel in his exception did not dispute the accuracy of the court's recollection. The comment by the court was not argumentative in favor of the state nor does the record show that it was a misstatement. The defendant claims only that testimony, not reflected in the record, would make it possible to conclude that a borrower of the vehicle put heroin into the trunk. That testimony shows that the vehicle was borrowed more than two months before the time at which the defendant put a piece of cardboard into the trunk of his vehicle. The state's evidence was that the police found heroin under the cardboard. The defendant testified that he could not see into the trunk when it was searched.

At any rate, the court was careful to leave the determination of the question to the jury. *Buonanno* v. *Cameron,* 131 Conn. 513, 517, 41 A.2d 107; *Heslin* v. *Malone,* 116 Conn. 471, 478, 165 A. 594. We find no prejudice created by the court's answer, especially when it is considered with the immediate admonition that it was the jury's recollection which controlled. Moreover, a proper charge to the jury on their duty to determine matters of fact, where the court has and where it has not commented on them, would further insure against prejudice. In this case the charge is not printed and is, therefore, presumed to be correct. *Begley* v. *Kohl & Madden Printing Ink Co.,* 157 Conn. 445, 451–52, 254 A.2d 907; *Facey* v. *Merkle,* 146 Conn. 129, 132, 148 A.2d 261; see *State* v. *Grimes,* 154 Conn. 314, 319, 228 A.2d 141; *Christie* v. *Eager,* 129 Conn. 62, 65, 26 A.2d 352; *State* v. *Perretta,* 93 Conn. 328, 342, 105 A. 690.

The final assignment of error is that the verdict was against the weight of the evidence. We test this claim by the evidence printed in the appendices to the briefs. *State* v. *Savage,* supra; *State* v. *Mortoro,* 157 Conn. 392, 393, 254 A.2d 574; *State* v. *Gyuro,* 156 Conn. 391, 397, 242 A.2d 734, cert. denied, 393 U.S. 937, 89 S. Ct. 301, 21 L. Ed. 2d 274. The jury could have found the following facts: On December 8, 1969, at about 10:30 in the morning, the defendant pulled his vehicle to the curb on Bishop Street in the city of Waterbury. He was alone in the vehicle and was behind the steering wheel. Two police officers, with a search and seizure warrant for the defendant, his vehicle and the apartment in which he was living, crossed the street just as the defendant was about to leave his vehicle. The vehicle was searched and fifteen glassine bags of white powder were found in the trunk under a piece of cardboard

which in turn was covered by a pillow-shaped piece of polyester fiber. On finding the white powder, the defendant was placed under arrest. The chief toxicologist for the state department of health found that the white powder contained heroin. The defendant denied using heroin, was not under the influence of heroin at the time of his arrest, had no signs of heroin use on his body and did not undergo withdrawal symptoms. Ten days prior to the date of the arrest, an officer saw a known addict enter the apartment where the defendant resided, stay about five minutes and then leave. On the date of the arrest, police officers went to the apartment where the defendant resided but found no heroin.

A "half-load" is fifteen small glassine envelopes containing heroin. A "half-load" of heroin is significant with reference to narcotic trafficking because heroin comes from the city of New York to dealers in Waterbury in that fashion. A "half-load" is what a dealer in narcotics would have in his possession. The defendant placed the cardboard, under which the heroin envelopes were found, in his trunk in November, 1969. The defendant was the only one who had the keys to his trunk and he did not let anyone take those keys. The defendant knew that one could purchase heroin in the city of New York. He had been in the city of New York in November, 1969, and again on the day before his arrest. This evidence was sufficient to support the jury's conclusion that the defendant was guilty beyond a reasonable doubt on both counts.

There is no error.

In this opinion the other judges concurred.