STATE OF CONNECTICUT *v.* JESUS AVILA

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued April 2—decision released July 2, 1974

*Richard T. Meehan,* for the appellant (defendant).

*Donald A. Browne,* state's attorney, for the appellee (state).

LOISELLE, J. The defendant was tried and convicted by a jury on an information charging him with

the possession of heroin with intent to sell or dispense the drug in violation of Public Acts 1969, No. 753, § 18 (a) (General Statutes § 19-480 [a].) The defendant has appealed, claiming that the court erred in admitting and in refusing to strike certain testimony and evidence, in erroneously charging the jury, in denying the defendant's motion for a directed verdict, and in denying the defendant's motion to set the verdict aside.

The defendant's assignment of errors regarding the failure of the court to charge as requested are tested by the claims of proof as they appear in the finding. Practice Book §§ 609, 635; *State* v. *Edwards,* 163 Conn. 527, 528, 316 A.2d 387; *Southington* v. *Francis,* 159 Conn. 64, 68, 266 A.2d 387.

The state claims to have proved the following: Three police officers, Alerise Best, Earl Mellow and Charles D. Smith, were assigned to check the Bridgeport railroad station at about 12:20 a.m. on September 29, 1970, for Luis Perez and a companion. A train from New York arrived at the railroad station at about 12:30 a.m. and the officers saw Luis Perez and the defendant walking down the stairs with other passengers. When Smith and Best first saw the defendant, he was carrying a paper bag. Smith, Mellow and Best started to pursue Perez as he began running through a tunnel toward the street. At this time, Mellow also noticed that the defendant was carrying a brown bag. Best was about halfway through the tunnel when he turned around and headed back in the direction of the defendant. At that time the defendant was about one-quarter of the way through the tunnel and still had the bag. Best followed the defendant as he walked out toward a parking lot. The defendant

walked down the stairs leading from the railroad station and, as he turned from the stairs toward the parking lot, tossed the bag over a fence. Best did not say anything to the defendant until they reached the defendant's vehicle in the parking lot. Best then asked the defendant about the location of the brown bag he had been carrying and the defendant disclaimed any knowledge of it. The defendant accompanied Best back into the railroad station tunnel. Within two or three minutes the other two officers returned in their unmarked police car with Perez. Smith got out of the car and stood with the defendant until Best retrieved the bag from behind the fence. In the bag was a box which contained an apple core, a loaded .38 calibre pistol and a small package wrapped in tinfoil.

The package found in the bag contained a white powder, which subsequent chemical analysis revealed to be 112 grams of 85 percent pure heroin. Ordinarily, glassine envelopes sold on the streets contain about one hundred milligrams of 3 to 4 percent pure heroin. One hundred twelve grams of 85 percent heroin could be used to produce 22,400 individual glassine envelopes, each containing 100 milligrams of powder of between 3 and 4 percent pure heroin, which could be sold in the Bridgeport area for $6 each.

The defendant claimed to have proved the following: On September 29, 1970, he went to meet a friend in New York. After seeing a show and going to his friend's home, he came back to Bridgeport by train. Luis Perez, whom he knew, disembarked from the train when the defendant did, upon its arrival at Bridgeport. The defendant was a few steps behind Perez, when the latter started running,

chased by two men. When the defendant reached his vehicle in the parking lot, Officer Best arrived and instructed him to return to the railroad station. The defendant was brought to the tunnel. The defendant watched Best, who appeared to be looking for something, as he jumped over a fence and returned with a bag. Before he returned to the tunnel and the police car, the defendant had never seen either the bag or the box within it. He had never seen the gun before. He had never seen heroin before and did not know what it was. The preceding facts, although not a full recitation of those offered, are sufficient for a discussion of the errors claimed by the defendant.

The defendant claims that four requests to charge were refused by the court. The first request referred to the intent required to find him guilty of the crime charged. The defendant claims in his brief that the court's charge to the jury failed to indicate "that intent, as a separate, necessary element of the offense of possession with intent to sell, although proven by inference, must be proven beyond a reasonable doubt." The defendant further argues that "[a]lthough in other parts of its instructions the court applied the phrase 'proof beyond a reasonable doubt' to the offense in the whole, it failed to adequately inform the jury that a reasonable doubt solely as to the element of intent could militate against a guilty verdict as to the charge of possession with intent to sell." In its general statement to the jury, the court instructed them that "the State must have proven every essential element of the crime charged beyond a reasonable doubt." Later in the charge when discussing the elements of possession with intent to sell, the court stated: "I have told you that the State must prove the

essential elements of the crime charged beyond a reasonable doubt before the Jury can return a verdict of guilty." Thereafter the court commented on the element of intent and further stated: "[A]ny intent must be determined by you from the evidence heard by you during the course of the trial. Intent is generally proven by circumstantial evidence. In some cases you may have direct evidence. In some cases you may have circumstantial evidence. In this case I will charge you that we heard no direct evidence. So, if you're going to find this man guilty, it must be proven to you beyond a reasonable doubt that the intent was proven by circumstantial evidence." It is difficult to see how the court could have been more specific as to this claim of error. The court did not err in refusing the defendant's request to charge on this point.

The next two requests to charge, the omission of which was claimed as error, referred to instructions on the meaning of unlawful possession of narcotics. The defendant claims that the jury were not properly instructed that, to be found guilty, the defendant must have exercised dominion and control over the heroin, had knowledge of its presence, and had knowledge of its narcotic character. *State* v. *Harris,* 159 Conn. 521, 531, 271 A.2d 74, cert. dismissed, 400 U.S. 1019, 91 S. Ct. 578, 27 L. Ed. 2d 630, cited with approval the statement that " ' "[p]ossess," as used in criminal statutes, ordinarily signifies an intentional control of a designated thing accompanied by a knowledge of its character.' *State* v. *Reed,* 34 N.J. 554, 557, 170 A.2d 419; see note, 91 A.L.R. 2d 810." The court correctly charged the jury on the dominion and control of the narcotics necessary to establish possession. The defendant claims that the instructions were insufficient as to

whether he had knowledge that what he was carrying was narcotics and as to knowledge of its character. The court did give specific instructions as to what would constitute possession and did give specific instructions on intent to sell "a narcotic drug." Further, the court instructed the jury that "[i]t is essential that . . . the State must prove that on September 29, 1970, the accused did knowingly possess a narcotic drug with intent to sell or possess heroin." Instructions to the jury need not be in the precise language of the requests. *State* v. *Fine,* 159 Conn. 296, 301, 268 A.2d 649; *State* v. *Tropiano,* 158 Conn. 412, 420, 262 A.2d 147, cert. denied, 398 U.S. 949, 90 S. Ct. 1866, 26 L. Ed. 2d 288. The charge gave the jury a clear understanding of the elements of the crime charged and the proper guidance to determine if those elements were present. *State* v. *Alterio,* 154 Conn. 23, 27, 220 A.2d 451, and cases cited.

The assignment of error relating to the failure of the court to charge on the issue of motive is not briefed other than by a mention that it was placed in issue by argument of counsel. Neither the record nor the briefs reveal anything relating to motive. Consequently, this assignment of error is not considered. *Stoner* v. *Stoner,* 163 Conn. 345, 348, 307 A.2d 146; *Thomas* v. *Ganezer,* 137 Conn. 415, 423, 78 A.2d 539.

The next two assignments of error relate to the admissibility of certain evidence introduced by the state and of certain testimony elicited by the state from two of its witnesses. Abraham Stolman, the chief toxicologist for the state department of health, was allowed to testify that his assistant analyzed the contents of a package sent to his department by

the Bridgeport police and found that it contained 112 grams of 85 percent pure heroin. He further testified that the usual concentration of pure heroin in the substance sold to heroin users in glassine bags is between 3 and 4 percent and that the total amount of powder ordinarily found in a single glassine bag is about one-tenth of a gram. He then testified that the package of heroin that he examined could be cut, or intermixed, with other substances to yield an amount which would fill 22,400 glassine bags of the type of heroin ordinarily sold on the street. The defendant objected and took timely exception to this evidence. In his objection the defendant argued that Stolman had no knowledge of what was to be done with the package, and that the testimony lacked relevancy and would only inflame the minds of the jury. During Stolman's testimony before the jury, the defendant with the permission of the court reserved his right to object, and at its conclusion the defendant moved that the toxicologist's testimony be stricken, adopting the grounds of his earlier objection as the basis for the motion. The defendant duly excepted to the denial of his motion to strike.

In his brief, the defendant argues that on cross-examination Stolman admitted that he was incompetent to testify about the number of glassine bags which could be made from the contents of the package which he analyzed. The defendant apparently bases this argument on the toxicologist's statements that he had no way of knowing what was going to be done with the particular powder which his assistant analyzed. This argument can be dealt with by pointing out that the challenged testimony by Stolman did not indicate that he knew the defendant's plans for the package of narcotics, but that, from his past

experience in analyzing packages of heroin sold in the streets and in his opinion as an expert witness, the heroin seized in this case could have been cut and repackaged to fill 22,400 glassine bags. No lack of qualification in the expert witness is involved or claimed. "Because it cannot be assumed that these facts were common knowledge, this testimony was properly allowed to aid the jury in determining the questions in issue. *State* v. *Grosso,* 139 Conn. 229, 233, 93 A.2d 146; *Taylor* v. *Monroe,* 43 Conn. 36, 44; McCormick, Evidence (2d Ed.) § 13. As the witness qualified as an expert, any objection to his testimony would go to its weight rather than to its admissibility. *Sanderson* v. *Bob's Coaster Corporation,* 133 Conn. 677, 682, 54 A.2d 270; *Wray* v. *Fairfield Amusement Co.,* 126 Conn. 221, 224, 10 A.2d 600." *State* v. *Grayton,* 163 Conn. 104, 111, 302 A.2d 246, cert. denied, 409 U.S. 1045, 93 S. Ct. 542, 34 L. Ed. 2d 495.

In arguing that the toxicologist's testimony was irrelevant and should have been stricken, the defendant supports his claim by citing cases in which the state was allowed to introduce evidence which had no apparent connection with a defendant's case, on the representation that it would later be "tied up" or linked to a defendant. See, e.g., *State* v. *Ferraro,* 160 Conn. 42, 273 A.2d 694. In such cases, it is error for a trial court to refuse to strike evidence which the prosecution failed subsequently to connect with the case against a defendant. *State* v. *Ferraro,* supra, 45; *State* v. *Johnson,* 160 Conn. 28, 33, 273 A.2d 702; *State* v. *Buonomo,* 87 Conn. 285, 292, 87 A. 977. This argument might succeed in this case if the testimony under attack had been admitted to show that the defendant actually sold or distributed heroin. In this case, however, the charge dealt with

intent to sell, and, as pointed out above, it was necessary to show intent through circumstantial evidence. One of the circumstances relevant to intent was the amount of heroin, both in terms of quantity and quality, contained in the package. In view of Stolman's admission that he had no knowledge of the defendant's plans for the heroin, his testimony would have been incompetent had the state attempted to establish through him that any particular method of distribution was planned by the defendant. In an attempt to show an intent to sell, however, it was necessary and proper for the state to demonstrate the significance of the chemical analysis of the evidence through the toxicologist's expert testimony regarding the number of individual retail packages which could be produced from it. In proving a specific intent by circumstantial evidence, the range of relevant evidence is wide; 1 Wharton, Criminal Evidence (13th Ed.) § 168, pp. 308–9, and see *State* v. *Vars,* 154 Conn. 255, 267, 224 A.2d 744; and the court was not in error in admitting the challenged testimony and in denying the motion to strike.

In the course of the direct examination of Sergeant Patrick Dolan by the state, a small glassine envelope was introduced and characterized as the type of container in which heroin is packaged for retail sale on the street. Dolan was then allowed to testify that $6 was the retail price on the streets of Bridgeport for such a bag when filled with heroin. Although the defendant objected to the admission of this evidence and testimony, no exception was taken to the adverse rulings of the court. Consequently, this claim of error is not entitled to any consideration. Practice Book § 226; *State* v. *Hawkins,* 162 Conn. 514, 517, 294 A.2d 584, cert. denied, 409 U.S.

984, 93 S. Ct. 332, 34 L. Ed. 2d 249; *Farlow* v. *Andrews Corporation,* 154 Conn. 220, 226–27, 224 A.2d 546. The defendant subsequently moved that the court strike the testimony of Dolan and the admission of the glassine bag, and excepted to the ruling of the court denying that motion. The court's denial of the motion to strike may be reviewed.

The defendant's motion and objection were based on the contention that there was no evidence as to the intended use of the package of heroin allegedly in the defendant's possession, that the glassine envelope was not part of the evidence seized by the police, that the envelope was unrelated to the case, and that Dolan's testimony was similarly unrelated and was based on pure speculation and conjecture. No claim is made that the police officer lacked competency or the necessary expertise to testify as to the street value of a glassine bag of heroin. In light of the foregoing discussion of the admissibility of Stolman's testimony, it is clear that the court did not err in denying the defendant's motion to strike.

The defendant's final two claims are that the court erred in denying his motion for a directed verdict and his motion to set aside the verdict. The denial of the defendant's motion to set aside the verdict is tested in light of the evidence printed in the appendices to the briefs. *State* v. *Benton,* 161 Conn. 404, 406, 288 A.2d 411. "[T]he evidence must be given the construction most favorable to sustaining the jury's verdict; . . . [citations omitted]; but the verdict must be set aside if the evidence was insufficient to justify the jury in finding guilt beyond a reasonable doubt [citations omitted]." *State* v. *Raffone,* 161 Conn. 117, 121, 285 A.2d 323. The central issue

to this portion of the defendant's appeal is the question of whether there was sufficient evidence for the jury to infer intent. An individual's intention may be inferred from his or her conduct. *State* v. *Smith,* 157 Conn. 351, 354, 254 A.2d 447; *Kiernan* v. *Borst,* 144 Conn. 1, 6, 126 A.2d 569; and intent is usually established by circumstantial evidence. *State* v. *Sul,* 146 Conn. 78, 87, 147 A.2d 686; *State* v. *Nathan,* 138 Conn. 485, 488, 86 A.2d 322.

The state offered evidence that 112 grams of 85 percent pure heroin were seized, that the purity of the substance sold on the street to heroin users is about 3 to 4 percent, that the quantity and quality of heroin seized could be used to produce 22,400 glassine bags of the type of heroin ordinarily sold to users in Bridgeport for $6, and that a gun was found in the same box as the heroin. In addition the defendant testified that he was not a user. Possession of large quantities of prohibited narcotics will support a conclusion that it was possessed for distribution or for sale. *United States* v. *Johnson,* 469 F.2d 973, 977 (5th Cir.); *United States* v. *Mather,* 465 F.2d 1035 (5th Cir.), cert. denied, 409 U.S. 1085, 93 S. Ct. 685, 34 L. Ed. 2d 672. The defendant's reliance on such cases as *Leary* v. *United States,* 395 U.S. 6, 89 S. Ct. 1532, 23 L. Ed. 2d 57, and *Turner* v. *United States,* 396 U.S. 398, 90 S. Ct. 642, 24 L. Ed. 2d 610, is not well taken. The constitutional standard laid down in *Leary,* as it was recently applied in *State* v. *Watson,* 165 Conn. 577, 596, 345 A.2d 532, requires that the fact presumed by a statute can be said with substantial assurance to be more likely than not to flow from the proven fact on which it is made to depend. *Leary* v. *United States,* supra, 36. *Turner* upheld a conviction of possession of heroin with intent to distribute,

in part on the basis of intent inferred from the possession of 275 glassine bags of heroin. *Turner* v. *United States,* supra, 420. In the same opinion, the court reversed a conviction against the same defendant for possession of cocaine with intent to dispense or distribute it, in part, because the small amount, 14.68 grams of low quality cocaine, was consistent with a conclusion of possession for personal use. *Id.,* 423. Even if these opinions are assumed to apply directly to the facts of the present case, the verdict of the jury withstands the tests of both *Leary* and *Turner.* As the defendant was not a user, possession for personal consumption was not in issue. His status as a nonuser also establishes as more likely than not, a conclusion that some further transfer of the heroin would follow his possession.[1] The fact that a gun was also found with the heroin was relevant to the issue of intent to sell. "It may reasonably be inferred that an armed possessor of drugs has something more in mind than mere personal use." *United States* v. *Cannon,* 472 F.2d 144, 145 (9th Cir.). Under the recited facts, the jury could properly infer an intent to sell.

As to the balance of the issues presented in considering the sufficiency of the evidence to support the defendant's conviction either directly or by reasonable inferences, the appendix to the state's brief includes all the facts found in its claims of proof

---

[1] It is to be noted that the defendant was charged with possession of a narcotic drug "with the intent to sell or dispense" under what is now § 19-480 (a) and that "sale" is defined for the purpose of title 19 of the General Statutes as "any form of delivery which includes barter, exchange or gift, or offer therefor, and each such transaction made by any person whether as principal, proprietor, agent, servant or employee." § 19-443 (50). Under this definition, the conduct which the defendant must have been shown to have intended is quite broad.

in the finding which has been recited in part in this opinion. A review of these facts clearly indicates that there was sufficient evidence presented to support the verdict rendered.

There is no error.

In this opinion the other judges concurred.