STATE OF CONNECTICUT *v.* WELDON CLEMONS

HOUSE, C. J., LOISELLE, MACDONALD, BOGDANSKI and LONGO, Js.

Argued February 5—decision released April 29, 1975

*John R. Williams*, special public defender, for the appellant (defendant).

*Ernest J. Diette, Jr.*, assistant state's attorney, with whom, on the brief, were *Arnold Markle*, state's attorney, and *John J. Kelly*, assistant state's attorney, for the appellee (state).

MacDonald, J. This appeal arises from the defendant's conviction on one count of a seven-count information tried to a jury and, following that, his conviction upon a trial to the court on the second part of the information charging him as a third offender.

The defendant was charged with four counts of assault with intent to kill in violation of then General Statutes § 54-117, one count of carrying a pistol without a permit in violation of § 29-35, one count of resisting arrest in violation of then § 53-165, and one count of possession of heroin with intent to sell in violation of then § 19-480 (a). The jury returned

verdicts of not guilty on all but the count charging possession of heroin with intent to sell, of which offense the defendant was found guilty.

The finding with respect to the trial is not subject to material correction,[1] and from the evidence as printed in the appendices to the briefs, the jury could have found the following facts: On January 6, 1971, four members of the police department of the city of New Haven, Detectives Dennis J. Ryan and Francis S. Cacioli and Officers Julius J. Paecht and Thomas Provitz, proceeded in an unmarked car to Acky's Restaurant on Congress Avenue in New Haven, at approximately 4:30 a.m. Through a window the defendant was observed seated on a stool at the counter. As the four officers entered the restaurant and approached the defendant he observed them and placed his right hand in his right-hand pocket and removed and threw on the floor two bundles, each of which was subsequently demonstrated to consist of fifteen glassine envelopes, one bundle containing heroin, the other containing cocaine. He then took a revolver from his left-hand pocket and, holding it waist-high, pointed it at the four officers. Detective Ryan was able to place one of his hands on the revolver; Detective Cacioli drew his black-jack and struck Clemons once in the face with it; Officer Paecht grabbed Clemons around the waist; and Officer Provitz grabbed him around the head. After a struggle Clemons was subdued and a search of his person revealed another quantity of glassine envelopes, later shown to contain heroin.

---

[1] Counsel for the defendant has made a "shotgun" attack upon the finding, a procedure this court repeatedly has criticized in the past. *Dick* v. *Dick*, 167 Conn. 210, 212, 355 A.2d 110. There is no merit to any of the claimed errors in the court's preparation of the finding.

In all, 170 glassine envelopes and the revolver were seized from the person of the defendant. The defendant offered evidence from persons present in the restaurant that conflicted in some respects with the account given by the four officers, but upon all the testimony the jury could have found the facts as listed above.

I

The defendant first claims error in the refusal of the court (*Healey, J.*) to conduct an evidentiary hearing upon the allegations of his motion to dismiss addressed to the Superior Court bench warrant upon which the defendant was arrested. The defendant alleged that the affidavit in support of the warrant was false in virtually all of its material allegations, and that the due process clause of the fourteenth amendment required the court to permit him to controvert the assertions of this affidavit. The United States Supreme Court has refrained from ruling on this question. *North Carolina* v. *Wrenn,* 417 U.S. 973, 94 S. Ct. 3180, 41 L. Ed. 2d 1144 (opinion of White, J., dissenting from denial of certiorari); *Rugendorf* v. *United States,* 376 U.S. 528, 532, 84 S. Ct. 825, 11 L. Ed. 2d 887.

The recent weight of authority in the federal jurisdictions appears to support the allowance of an evidentiary hearing, not as a matter of right but in the discretion of the court and only upon an initial showing of falsehood or other imposition upon the issuing magistrate. See, e.g., *United States* v. *Dunnings,* 425 F.2d 836 (2d Cir.), cert. denied, 397 U.S. 1002, 90 S. Ct. 1149, 25 L. Ed. 2d 412; *United States* v. *Culotta,* 413 F.2d 1343 (2d Cir.), cert. denied, 396 U.S. 1019, 90 S. Ct. 586, 24 L. Ed. 2d 510. More than mere conclusions in the defendant's written motion

is necessary. The defendant must set out factual allegations, preferably supported by affidavit, sufficient to warrant such relief. The court, citing the prevailing federal rule, found that the defendant failed to make the required "initial showing." The defendant has failed to demonstrate that this ruling constituted an abuse of the trial court's discretion and we find no basis supporting such a conclusion.

## II

The defendant next claims that § 19-480 (a), as it read at the time of this offense, was unconstitutionally vague and penalized a "mere state of mind." The defendant is correct in his citation of authority that a penal statute, such as § 19-480 (a), must be sufficiently certain so as clearly to delineate the conduct to which its proscriptions are addressed. *State* v. *Cataudella*, 159 Conn. 544, 556, 271 A.2d 99; *State* v. *Zazzaro*, 128 Conn. 160, 164, 20 A.2d 737. We cannot find, however, from a careful reading of the statute under consideration, and the cases that have construed it, that it is at all vague. As to his argument that § 19-480 (a) punished a mere state of mind by proscribing possession of narcotic substances "with the intent to sell," the defendant misconceives the fundamental principles of law that he cites as authority for his argument and with which we quite agree, to the effect that "[a] mere intention to commit a crime, unaccompanied by any act, cannot be punished"; 2 Swift, Digest, p. 258; that "in all temporal jurisdictions an *overt* act, or some evidence of an intended crime, is necessary, in order to demonstrate the depravity of the will, before the man is liable to punishment"; 4 Blackstone, Commentaries, p. *21; and that "the law does not con-

cern itself with mere guilty intention, unconnected with any overt act or outward manifestation." 21 Am. Jur. 2d 85, Criminal Law, § 4.

The statute under consideration does not purport to punish intent in the abstract as an isolated thought process. Rather, through the presentation of circumstantial evidence from which an inference may be drawn of a more nefarious purpose than possession for personal use, it attempts to punish acts which call for substantially greater penalties than the act of mere possession for personal use. The presentation of evidence from which an intent to sell may be inferred was recently discussed in *State* v. *Avila*, 166 Conn. 569, 353 A.2d 776, sustaining a conviction for possession of heroin with intent to sell under this same statute. Crimes of specific intent are common in the law. They are not founded upon a fictionalized state of mind but require proof beyond a reasonable doubt that such an intention exists. The inference drawn by the trier must be rational and founded upon the evidence. An intention, standing alone, is not what the statute proscribes and prosecution under the statute will fail unless the intent proved springs from and amplifies actual conduct. The defendant's challenge on this ground is not well founded and fails in its logic.

## III

Before trial the defendant moved for authorization to expend funds for an independent toxicological examination. Prior to the taking of this appeal, Judge Aaron J. Palmer, who heard and denied this motion, died, and no finding was obtainable, but counsel for the defendant and the state have stipulated that the defendant was indigent and unable

to pay the cost of an independent toxicological examination. Proof of the exact nature of the substances upon which the prosecution is grounded, of course, is necessary, and the nature of the examinations essential for such proof with a high degree of scientific exactitude mandates the opinion of one competent to conduct such examinations.[2]

As with any question of fact, the state must prove the narcotic or prohibited nature of the substance beyond a reasonable doubt. As with any factual question that requires evidence of experts, the defendant may produce expert testimony to rebut the opinion of the prosecution's witness under the principles pertaining to the defense of indigent defendants set forth in such cases as *State* v. *Hudson,* 154 Conn. 631, 228 A.2d 132, and *State* v. *Reid,* 146 Conn. 227, 149 A.2d 698. See also *Washington* v. *Texas,* 388 U.S. 14, 87 S. Ct. 1920, 18 L. Ed. 2d 1019. Of necessity, this requires that the defendant's expert be given access, under controlled circumstances, to the claimed prohibited substances in order to conduct toxicological examinations to provide a foundation for the defense expert's rendition of an opinion as to the nature of the substance. See *Jackson* v. *State,* 243 So. 2d 396 (Miss.) (due process requires a finding that the trial court's refusal to provide a sample for the defendant's examination was an abuse of discretion); see also *United States* v. *Tirado,* 25 F.R.D. 270 (S.D. N.Y.); *United States* v. *Taylor,* 25 F.R.D. 225 (E.D. N.Y.); *People* v. *Perrell,* 47 Misc. 2d 1024, 263 N.Y.S.2d 640.

---

[2] Section 19-483 (b) allows the use in evidence of the report of the toxicologist in lieu of personal testimony unless the defendant, having been notified in accordance with the procedure under the statute, objects in writing to the use of the report.

The defendant has assigned as error the court's denial of his request for an expert witness funded by the state. Where the state has access to expert testimony and plans to utilize such testimony, the state should provide an indigent defendant access to an independent expert upon a showing of reasonable necessity by the defendant for such an expert. It is not, however, the defendant's status as an indigent alone that requires this but rather a showing by an indigent defendant that such expert testimony is material and necessary to provide an adequate defense. The absence of a finding on this question should not penalize the defendant and thus this court will not assume, from the absence of reference to the necessity or materiality of such testimony in the stipulation, that no showing was made. Rather, under the unique circumstance created by the lack of a finding on this issue, we have searched the record to determine whether such a necessity was demonstrated at trial by the defendant. The defendant specifically admitted that he had made two purchases of heroin that evening and had administered a dosage of the substance to himself at one point during the evening. The defendant testified that he was presently addicted to heroin and had been using it since 1964. In order to purchase heroin he would acquire $300 a day by shooting pool, playing dice and stealing. Although the defendant contested the state's allegation that he had 170 glassine bags of heroin on his person at the time of his arrest, admitting instead to possession of only fifteen bags of heroin and fifteen bags of cocaine, the record does not disclose that the defendant ever contested that the substance contained in the remaining 140 packets was heroin, as determined by Abraham Stolman, state chief toxicologist, who testified for

the state. Nor does the record disclose that the defendant attempted to impeach the findings or methods of testing employed by the analyst or to renew his request for an independent examination during the trial. This court encourages the necessary expenditure of state funds to provide indigents with an adequate means of presenting reasonable defenses. We cannot find, however, that the defendant's request was reasonable and necessary under the circumstances and thus we cannot find that the court abused its discretion in denying the motion.

## IV

The defendant next claims that the trial court denied him the right to confront the witnesses appearing against him by limiting his cross-examination of several prosecution witnesses—witnesses from whom the defendant sought to elicit answers with regard to matters not relevant to the crime of which he was convicted, but bearing on the witnesses' credibility. An examination of the record, briefs, and appendices reveals that there is no merit to this claim. The defendant was allowed to cross-examine the state's witnesses extensively as to matters bearing on their credibility, in many instances delving into areas of the most questionable peripheral relevance. The extent of cross-examination of a witness with regard to that person's credibility is within the discretion of the trial court. State v. Tropiano, 158 Conn. 412, 426, 262 A.2d 147, cert. denied, 398 U.S. 949, 90 S. Ct. 1866, 26 L. Ed. 2d 288; State v. Luzzi, 147 Conn. 40, 46, 156 A.2d 505. The defendant failed to demonstrate to the trial court and to this court, in his brief, the materiality of the questions asked, and we cannot find that the court abused its discretion.

The defendant also claims that the trial court "permitted the state excessive latitude in cross-examination of defense witnesses." The defendant produced Louis Davis as a witness to testify regarding the reputation of several of the arresting police officers for use of excessive force. On cross-examination the state attempted to impeach Davis by his prior conviction for sale and possession of heroin. Thereafter the assistant state's attorney asked, "So, you know something about heroin?" The witness responded that he did and the defendant then objected to the question apparently on the grounds that it went beyond the scope of direct examination and was improper impeachment. The court allowed the question as properly addressed to the issue of Davis' credibility. It is not clear why this particular claim was assigned as error. The question of the reputation of the officers for use of excessive force in making arrests would be relevant on the trial of those counts pertaining to assault with intent to kill and resisting arrest. It is, however, of no relevancy to the issue on appeal, that is, whether the defendant possessed narcotic substances with the intent to sell. Improper impeachment of Davis' testimony could, at best, cause the jury to disregard his direct testimony. That these officers may have been excessively forceful in their methods of apprehension does not affect the question of guilt of the crime for which the defendant was ultimately convicted.

## V

The defendant next assigns error in the court's refusal to instruct the jury as requested on the relationship of voluntary intoxication to specific intent.

Conviction for possession of a narcotic substance with the intent to sell requires proof of a specific intent to do the prohibited act. *State* v. *Avila,* 166 Conn. 569, 579–80, 353 A.2d 776; *State* v. *Husser,* 161 Conn. 513, 290 A.2d 336. Voluntary intoxication is relevant to show an absence of specific intent. *State* v. *Bitting,* 162 Conn. 1, 7, 291 A.2d 240. Had evidence been adduced that the defendant was so intoxicated at the time of the commission of this offense that he was unable to form a specific intent, the court would have been remiss in failing to instruct the jury on this principle. *State* v. *Dortch,* 139 Conn. 317, 323–25, 93 A.2d 490. The record, however, does not disclose any evidence that the defendant was so intoxicated at the time of his arrest, and such a showing is necessary to entitle the defendant to this mitigating instruction. *State* v. *Fiske,* 63 Conn. 388, 391, 28 A. 572. The record does disclose that the defendant and James Walton purchased six bags of heroin during the evening of January 5, 1971, and that, subsequently, they went to Walton's apartment where they injected heroin into themselves. No further indication, however, can be found in the record to support an inference that the defendant was intoxicated to the point of incapacity to form a specific intent at the time the offense occurred, approximately 4:30 a.m. on January 6, 1971, or, in fact, that he was at all intoxicated at that time. Further, the presentation by his own testimony of a thorough and lucid account of the events of that evening and of the following early morning militates against any inference that the defendant was intoxicated to the point that the instruction was required. The court did not err in refusing to instruct the jury as requested on this issue.

The defendant next claims error in the court's failure to charge the jury to the effect that if they found the defendant to have been addicted to heroin at the time of his arrest and, as a result thereof, that he lacked substantial capacity to conform his conduct to the requirements of law, then they must find him not guilty. A similar argument was put forth and rejected recently in *State* v. *Smith*, 167 Conn. 328, 331–33, 355 A.2d 257, and we adhere to our reasoning in that decision and find no error in the court's failure to give this instruction as requested.

## VI

The defendant claims error in the court's denial of his motion for a directed verdict and subsequent motion to set aside the verdict, based upon the central claim that the evidence was insufficient to support a finding of guilt beyond a reasonable doubt. In his brief the defendant admits that the evidence was sufficient to convict him of possession of heroin. He claims, however, that the evidence was not sufficient to convict him of possession with intent to sell. As previously mentioned, we recently discussed in *State* v. *Avila,* supra, the factors that would tend to prove, circumstantially, an intent to sell under this statute, holding specifically (p. 580) that the armed possessor of a quantity of narcotics far greater than the amount a drug user would usually have in his possession for his own use can be found to possess those narcotics with the intent to sell. An examination of the evidence printed in the appendices to the briefs amply supports the verdict.

## VII

The defendant was found guilty, after a trial to the court, of being a third offender under § 54-121

of the General Statutes, since repealed. 1969 Public Acts, No. 828, § 214. The court found that the defendant had been imprisoned on two convictions prior to his conviction under the present information: On August 16, 1966, the defendant was incarcerated in a state prison and thereafter was paroled; on April 19, 1968, while still on parole under the sentence of August 16, 1966, the defendant was sentenced to a period of incarceration to run concurrently with the sentence imposed on August 16, 1966. The court concluded that the term of imprisonment imposed on April 19, 1968, was not included wholly within the term imposed on August 16, 1966, and as such constituted the second of two separate terms of imprisonment and thus found the defendant guilty of being a third offender.

Section 54-121 provided that one would be a third offender when one "has twice before been convicted, sentenced and imprisoned in a state prison or penitentiary." The defendant's sole basis for contending that he is not a third offender is that the concurrence of the second incarceration with the period remaining on the first sentence prevents its constituting the second of two separate imprisonments. There is no merit to this argument. Placing such a construction on this statute and its successor, § 53a-40, would tend to discourage concurrent sentences. The 1966 and 1968 convictions constitute separate judgments upon each of which the defendant was required to serve a set period of imprisonment. Had the defendant been pardoned of the second offense prior to completion of his term of imprisonment, or had he received a modification of that second term, he still would have been required to serve the term meted out in the first sentence.

The imposition of a concurrent sentence is not an empty act, as the defendant's argument implies. Rather, it allows the court the flexibility of setting definite periods of imprisonment that fit the particular defendant's situation, despite the number of offenses to which the sentences apply; they remain, however, separate terms of imprisonment which the legislature has permitted to be served at one time.

## VIII

The final assignment of error that has been briefed pertains to the court's refusal to inspect in camera a document, produced by the New Haven chief of police pursuant to a subpoena duces tecum, to ascertain whether it contained prior inconsistent statements by that witness or exculpatory material. The court permitted the defendant wide latitude in examining the chief of police on issues of peripheral importance and denied the defendant's motion to examine the report, which the record suggests was prepared as an investigative report for the chief of police and the board of police commissioners with regard to intradepartmental matters with little direct bearing on the issues on trial. It is apparent from the comments of the defendant's counsel that he was aware of the existence of this report in advance of the time that it was produced under the subpoena. The chief of police was called to testify with regard to the reputations of Detectives Ryan and Cacioli for excessive violence in making arrests. He stated, in response to questions from the defendant, that he had formed no opinion as to the character of those officers. Counsel's request to examine the report as a prior statement to determine the

existence of an inconsistency with this testimony was made with little foundation. He never determined from the witness whether the report contained his prior statement. It was, apparently, a summary of an investigation prepared by personnel in the internal affairs division of the New Haven police department and had not been read by the witness. The defendant's reliance on *State* v. *Clemente*, 166 Conn. 501, 515, 353 A.2d 723, and *State* v. *Pikul*, 150 Conn. 195, 187 A.2d 442, is misplaced.

Counsel for the defendant next urged the court to examine the report to determine the presence of exculpatory material. The court, not wishing to delay the trial for an inspection of what was described as a "four-inch thick" report, an obvious exaggeration but an indication that the document was lengthy, was not convinced of the need for such a delay and refused the request. Counsel's inquiry was focused upon the credibility of the two officers, an issue upon which the defendant produced an array of witnesses who characterized these officers as brutal and deceitful. Even if, as the defendant contends, cases such as *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215, impose a duty upon the trial court to inspect any document that might contain exculpatory information, an interpretation that we are not persuaded is reasonably drawn from *Brady*, the record fails to disclose that the defendant was prejudiced by the court's refusal. The defendant's counsel vigorously pursued the issue of the officers' capacity for violence, and the jury's verdict of not guilty on the other six counts of the information might be interpreted as an indication that he convinced them on this point. Whether these officers, however, employed exces-

sive force in effecting the arrest was irrelevant to the issue of the defendant's guilt of the narcotics offense.

There is no error.

In this opinion the other judges concurred.