David Montgomery WEBB, Appellee,

v.

Terrell Don HUTTO, Appellant.

No. 83–6086.

United States Court of Appeals,
Fourth Circuit.

Argued June 7, 1983.

Decided Nov. 2, 1983.

Certiorari Denied March 5, 1984.

See 104 S.Ct. 1444.

---

Richard B. Smith, Asst. Atty. Gen., Richmond, Va. (Gerald L. Baliles, Atty. Gen. of Va., Richmond, Va., on brief), for appellant.

Harry F. Bosen, Jr. (Harry F. Bosen, Jr., P.C., on brief), for appellee.

Before WIDENER and MURNAGHAN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

MURNAGHAN, Circuit Judge:

David Montgomery Webb was convicted in the Circuit Court for the City of Salem, Virginia on July 24, 1980 for possession of, and for possessing with intent to distribute, a controlled substance. Sentence was suspended as to the possession count and twelve years were imposed on the possession with intent to distribute count, but six years were suspended, leaving a sentence of six years to be served.

We consider an appeal by the Commonwealth from a grant to Webb of the writ of *habeas corpus* by the United States District Court for the Western District of Virginia, 564 F.Supp. 405. The grant was limited to the conviction for possession with intent to distribute, Webb having withdrawn that portion of his petition for *habeas corpus* regarding his conviction on the charge of simple possession.

The police had been properly prudent and had obtained a warrant to search a house for suspected marijuana possessed with intent to distribute. They executed the warrant on October 30, 1979, and, upon their entry of the house, they caught Nancy W. Thompson, the owner, and Virgil D. Spence with quantities of a powder which later proved to be methamphetamine. Spence was cutting powder over scales. Thompson stood by with scissors.

Webb had responded to the knock of the police at the door. He was shown to have resided at the house whenever he visited the Roanoke area. The crucial question was whether Webb was a participant or merely an innocent bystander in what the evidence established to be a developed drug operation.

All three, Webb, Spence and Thompson, were indicted. Webb was the first to come to trial. Proceedings commenced on Thursday, July 17, 1980, in the Circuit Court for the City of Salem, Virginia. Both the prosecution and the defense announced their readiness for trial. Webb waived trial by jury, the witnesses who counsel indicated would give evidence were sworn and separated, and the Commonwealth's first witness, a police detective, testified. He was effectively cross-examined in a manner raising substantial doubt as to the existence of a connection between Webb and the drugs. The testimony was that, on answering the knock of the police officials executing the warrant, Webb took no steps to warn Spence and Thompson. Nor were the drugs found with clothing possessed by

Webb, but rather were in locations which were reasonably to be associated with Thompson.

Thereupon the prosecuting attorney woke up to a perilously large gap in his case. He moved for a continuance, to obtain testimony from Spence and Thompson in order to bolster the case against Webb. The prosecutor explained:

> In the preparation of this case, the Commonwealth has not attempted, although there are two other co-defendants, has not attempted to enter into any sort of plea agreement wherein a co-defendant whether that co-defendant be Mr. Webb or Miss Thompson or Mr. Spence would testify against any of the other two co-defendants. We have approached counsel ... co-counsel about whether or not they felt it would be in their client's best interest to testify voluntarily for the Commonwealth. And in preparing for trial yesterday I touched base once again the office of Mr. Spence's attorney, that being Mr. Charles Phillips. Mr. Phillips being out of town, Mr. Doherty received the message and being unaware of this particular case attempted to contact Mr. Spence as to whether or not he perhaps might wish to testify in this case.... We're asking a continuance, so to speak, or a recess until Mr. Phillips who is Mr. Spence's attorney, who is presently on vacation would return to town on Monday, so that he might properly advise his client whether or not it would be in his best interest to voluntarily testify.... I would only assume that Mr. Spence would, if he desired to testify as to the truth, from what the Commonwealth knows of the case the truth would be [sic] have tremendous impact on this particu-

lar case. And we respectfully ask the Court to grant the Court ... grant the Commonwealth that recess so that we might determine whether or not Mr. Spence does in fact wish to testify as to the truth of the facts before the Court today.

The federal district judge who presided in the *habeas corpus* proceeding, whose findings we, of course, respect, determined "that the Commonwealth Attorney requested the continuance solely because of his realization that the case could not be made against the petitioner without the testimony of at least one of the co-defendants." He went on to point out:

> Neither of the co-defendants [Spence and Thompson] had been subpoenaed to testify at the trial held that day [July 17, 1980], that one of the co-defendants, Virgil Spence, was present in the courthouse during the trial of petitioner, with the knowledge of the Commonwealth's Attorney, and that despite his presence, the co-defendant was not called to the stand to determine whether he would answer questions or not. Counsel representing Spence at the time of the trial indicated in the *habeas* proceeding that he instructed his client to "tell the truth and co-operate to the best of his ability" should he be subpoenaed.[1]

The Salem Circuit Court concluded that, in the interest of justice, it being unclear whether Spence's counsel would or would not advise him to testify, it would be best to continue the trial for five days, until the 22nd of July, 1980. On that date Spence and Thompson testified. The evidence of Thompson was especially damaging to Webb.[2] The determination of guilt which followed was well supported by the record.

---

1. In the light of the findings of the district judge, we place no credence in the Commonwealth's proffered explanation that it was tender concern for Spence's right to the advice of counsel that made the prosecution unwilling to call Spence to the stand on July 17th. There was not even an attempt to call Spence for the limited initial purpose of learning whether he had had the benefit of counsel's advice as to whether to testify. His presence in the courthouse during the trial indicates that he was ready to testify. From the prosecutor's remarks it is clear that he had counsel representing him, and it required no great leap to arrive, at least preliminarily, at the conclusion that the advice of counsel was that he should testify.

2. *E.g.:*

> Q. So Larry [Webb's brother] gave you this $10,000.00, then how were the drugs acquired? Who acquired the drugs?

About the kindest word that one can apply to the prosecutor's failure to subpoena Spence and Thompson, and his failure to establish in advance of trial that they would not be advised to decline to testify on self-incrimination grounds is "sloppy."[3]

The petition for *habeas corpus* was grounded on three asserted constitutional infirmities:

A. Violation of Webb's rights to due process.[4]

B. Double jeopardy in violation of the Fifth Amendment.[5]

C. Denial of Webb's right to a speedy trial.

■ The assertion that speedy trial was denied need not detain us long. It was not argued on appeal. The right to a speedy trial was certainly satisfied here once a trial had commenced within nine months of the alleged offense and the first witness had been examined and cross-examined. Furthermore, a delay of five days (two of them Saturday and Sunday, when the court customarily would not be sitting in any event) was well within the customary time limits for a continuance, and simply does not support an assertion that the accused was not speedily brought to trial, especially considering the total lack of prejudice to the defendant here. *Cf. Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972) (five years' delay not unconstitutional); *Ricon v. Garrison,* 517 F.2d 628 (4th Cir.1975), *cert. denied,* 423 U.S. 895, 96 S.Ct.

A. Well, for a lengthy period of time, there was travel over the city trying to find a deal.

Q. Who would travel over the city?

A. Well, I made a few calls. David [David Montgomery Webb, the petitioner] made a few calls, you know, trying to get something worked out . . . a large quantity of something to work out at this point . . . to my knowledge this was the first big deal.

Q. What do you mean big deal?

A. This powder right here that we're referring to in this picture.

Q. Again, that was what three or four weeks prior to the 30th?

A. Yes. It seems though for some reason that was a lot of difficulty . . . there was money there but yet there was no drugs available. That was what the consequences were at the time. Nobody could find any large quantity of drugs.

Q. Had you ever talked to David Webb about this dilemma? Money but no drugs.

A. He and I had both discussed it, yes. Openly, between us.

Q. What efforts did he tell you that he was making to dissolve the dilemma?

A. To my knowledge he was working on it most of the time because his brother was very insistent that, you know, let's get this thing going, let's get this ball rolling so forth and so on.

Q. Who consummated this big deal? This first big deal you spoke of?

A. To my knowledge, David took the money left my home brought the drugs back.

Q. When you say to your knowledge, were you present when he physically brought the drugs in the house?

A. Yes.

It merits mention that the Joint Appendix was woefully deficient, eliminating all but two insignificant pages of Thompson's testimony.

Admittedly, under Federal Rule of Appellate Procedure 30, we may consider parts of the record not included in the Joint Appendix; the same rule also counsels against unnecessary inclusion in the Appendix of irrelevant portions of the record. But where, as here, the excluded testimony was quite significant, counsel would have better discharged their responsibilities by including Thompson's testimony in the Appendix.

3. It appears that the prosecutor was not interested in working out plea bargains with Spence and Thompson, presumably because he had them dead to rights. However, that consideration made it not unlikely that they would cooperate with the Commonwealth, even in the absence of any advantage plea bargains might insure, in the hopes that such cooperation would be taken into account in their favor at sentencing time.

4. The point has not been pursued on appeal, except in the sense that "prosecutorial overreaching" has been used by Webb to describe the behavior he contends should make the continuance here granted indistinguishable from a *dis*continuance by way of mistrial or *nolle prosequi* which, on double jeopardy grounds, would preclude further prosecution.

5. The Commonwealth has asserted and argued that the double jeopardy issue was not adequately preserved for review; the petitioner has argued the contrary at some length. We prefer, under all the circumstances of the case, to consider the merits of the double jeopardy claim, inasmuch as the conclusion we have reached leads to no different result than if we had declined to consider that issue.

195, 46 L.Ed.2d 127 (1975) (36 month delay not unconstitutional).

As for double jeopardy, the district judge was greatly influenced by what apparently seemed to him no more than an insignificant formal difference between (a) a mistrial, involving a discharge of the jury and an attempt to begin anew before another jury, (b) a dismissal in a non-jury proceeding followed by a complete recommencement before the same judge (both of which, in the absence of manifest necessity, would be impermissible on grounds of double jeopardy), and (c) a postponement for a few days in a non-jury trial followed by a continuation of the same case, taking up before the same judge at the point where the case had previously left off. However, the district judge was frank to acknowledge that a search for authority to sustain the proposition that a continuance should be deemed to constitute double jeopardy upon resumption by the same judge where the case had left off had "proved fruitless." [6]

■ The difficulty is that the doctrine of double jeopardy is by no means devoid of thin distinctions. Immediately before, and immediately after, empaneling and swearing of the jury things are much the same, but in one jeopardy has not attached while, in the other, it has. *Cf. Crist v. Bretz,* 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978). So, too, immediately before and immediately after the swearing of the first witness in a non-jury trial the difference is, in many respects, miniscule. *Cf. Serfass v. United States,* 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975). The simple, yet to us controlling, consideration is that the accused must be placed in jeopardy twice for double jeopardy to exist. It happens when the second event involves a completely new beginning, *i.e.,* when the second proceeding takes place before a new trier of fact, whether that be a different judge or jury, or the same judge starting with a clean slate. It simply does not occur when the very same proceeding continues on after a brief postponement before the first and only trier of fact, as was the case here.

The point is graphically illustrated by the decision in *Harris v. Young,* 607 F.2d 1081

---

**6.** The cases relied on by the district judge without exception involved complete discontinuance after jeopardy first attached, so that an entirely new proceeding, hence a second, or double, jeopardy, inevitably arose when trial began anew. *Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973) (Manifest necessity was held to permit a second trial even following discharge of the jury in the first proceeding after jeopardy had attached); *Downum v. United States,* 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); *Green v. United States,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957); *Harris v. Young,* 607 F.2d 1081 (4th Cir.1979), *cert. denied, sub nom. Mitchell v. Harris,* 444 U.S. 1025, 100 S.Ct. 688, 62 L.Ed.2d 659 (1980); *Mizell v. Attorney General of New York,* 586 F.2d 942 (2d Cir.1978), *cert. denied,* 440 U.S. 967, 99 S.Ct. 1519, 59 L.Ed.2d 783 (1979) (It was accepted that had there been a continuance, instead of a jury discharge, there would have been no double jeopardy); *Hunter v. Wade,* 169 F.2d 973 (10th Cir.1948), *affirmed,* 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949) (The second case was allowed to proceed because termination of the first was a matter of manifest necessity.); *Cornero v. United States,* 48 F.2d 69 (9th Cir.1931); *United States v. Levy,* 232 F.Supp. 661 (N.D.Fla.1964) (Another "imperious" and "urgent" necessity case where retrial was permitted).

The only case mentioned by the district judge involving a continuance, as distinguished from a discharge of the jury and a subsequent new trial, found that double jeopardy did not result. *United States v. Gunter,* 631 F.2d 583 (8th Cir.1980).

The same observations may be made as to additional citations made by counsel for Webb. They involved complete discontinuance of the first proceeding. *Arizona v. Washington,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978) (Manifest necessity was determined to justify retrial despite discontinuance of the first proceeding after jeopardy had attached); *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971).

Counsel's citation of a case involving only a continuance likewise held that no double jeopardy was present. *United States v. Luschen,* 614 F.2d 1164 (8th Cir.1980), *cert. denied sub nom. King v. United States,* 446 U.S. 939, 100 S.Ct. 2161, 64 L.Ed.2d 793 (1980) (The case appears to present only a permission by the court to reopen an issue during rebuttal, rather than a continuance. However, counsel for Webb in his brief has asserted: "*Luschen* involved a continuance, and there the continuance granted was only overnight, to permit the prosecution to run additional drug analyses suggested by the defendant.").

(4th Cir.1979), *cert. denied sub nom. Mitchell v. Harris,* 444 U.S. 1025, 100 S.Ct. 688, 62 L.Ed.2d 659 (1980). The jury trial there was, in circumstances not amounting to manifest necessity, aborted by the court's *sua sponte* declaration of a mistrial. A subsequent, wholly new, prosecution was held barred. However, Chief Judge Haynsworth, speaking for the court, was careful to point out that a less extreme alternative, which would not have brought double jeopardy into play, existed: "The discovery rule allows for a continuance for disclosure and inspection if new matter surfaces upon trial. This was an obvious solution to the problem." 607 F.2d at 1086.

In *Matter of Hunt,* 46 N.C.App. 732, 266 S.E.2d 385 (1980), it developed, in two cases both considered in the same appeal, that the prosecution could not succeed unless a continuance were granted to round up additional testimony. In one case the judge *sua sponte* granted a continuance. In the other the prosecution requested and was granted the same relief. The duration of the postponements were 9 days and 42 days respectively. The North Carolina Court of Appeals, in a carefully reasoned opinion, rejected claims of double jeopardy stating:

> It is clear in each of the cases that jeopardy attached only once—at the time the judge began to hear evidence. While respondents conceivably may have been put through additional embarrassment, anxiety and expense as a result of the continued hearings, the subsequent hearing before the same trier of fact was not a second trial barred by the Double Jeopardy Clause.
>
> ... In the cases before us the Fifth Amendment rights of each of the accused under the Clause—the right to have his case heard in its entirety and determined before the same trier of fact—has not been infringed.

46 N.C.App. at 735–36, 266 S.E.2d at 387–88.

We would not be taken to imply that, simply by use of terminology, a prosecutor could change a result. If what occurred indeed amounted to a beginning over, rather than a progression from the point at which the case had been suspended, calling it a continuation when actually it was a complete retrial would not enable the prosecution to escape the stricture against double jeopardy. However, in the instant case the record makes it indisputably clear that a true continuance was all that was involved.[7]

Nor, if there were egregious prosecutorial misconduct designed to make a delay appear to be a continuance when it would be more appropriate to speak in mistrial or jury discharge terms, do we wish to be understood as saying that the raising of the point only under double jeopardy should fail because the proper rubric was "denial of due process." While Webb, in his Brief, phrases his argument only in double jeopardy terms, we are loath to dispose of it on such a technical basis, given that he has

---

**7.** Subsequent to oral argument, counsel for Webb called to the court's attention the decision in *State v. O'Keefe,* 135 N.J.Super. 430, 343 A.2d 509 (Law Div.1975). There a two-week continuance granted *sua sponte* just as the prosecution was about to rest its case in a court which sat every weekday was held to bar, on double jeopardy grounds, any further proceedings in the case. If forced to choose between *O'Keefe* and the holding in the later decision in *Matter of Hunt,* 46 N.Car.App. 732, 266 S.E.2d 385 (1980), we would be inclined to regard *Hunt* as more applicable to the case before us. However, *O'Keefe* is also distinguishable in a significant respect. The delay was much less in Webb's case, essentially 3 days, given that Saturday and Sunday were not ones on which the court would customarily sit. The holding in *O'Keefe* was:

> A two-week continuance was an unreasonable break in the continuity of a trial being conducted in a municipal court that sits every weekday.

135 N.J.Super. at 441, 343 A.2d at 515.

*O'Keefe* further realized:

> Even though a declaration of mistrial caused by prosecutorial neglect would bar retrial, a continuance in the course of a trial caused by prosecutorial neglect should not bar resumption unless the neglect is inexcusable and the continuance is an unreasonable break in the continuity of the trial.

135 N.J.Super. at 440, 343 A.2d at 515. We cannot say that what happened here was both inexcusable in its neglect *and* unreasonable in the duration of the break.

made it altogether clear that the asserted misbehavior of the prosecutor is the gravamen of his complaint.

 Turning, therefore, to that aspect of the matter, we point out first that Webb has failed to identify any prejudice which he has suffered.[8] We simply are not prepared to assign to him vested rights in an ill-prepared prosecutor. Except for a claimed "right" not to have the case properly tried, with the ascertainment of truth enhanced, Webb points to nothing which has operated to injure his posture before the Circuit Court for the City of Salem.

It lay within the discretion of the state court judge who presided at the criminal trial to determine how severe the sanction should be for exceedingly poor preparation on the part of the Commonwealth's prosecutor. The prosecutor was fortunate that the trial judge did not order that the case proceed, without interruption, after a denial of the motion for a continuance, with a determination of "Not Guilty" the probable result.[9]

There is nothing in the record to show any predisposition of trial judges in the Virginia court system, or of the trial judge in Webb's case in particular, regularly to come to the rescue of hapless prosecutors to the point where objectivity might become suspect. Rather, it appears that the court was scrupulously interested in insuring that justice be done. There is manifestly a public purpose served by that objective.

Webb, as might be expected, has focused attention on the fact that, while the continuance request centered on Spence and whether he would testify, Thompson's testimony is what did him in. However, both Spence and Thompson testified. Each was spotlighted as someone in a position where

his or her testimony could be quite relevant. The prosecutor, belatedly waking up, could hardly overlook Thompson too as a possible source once he realized that her co-defendant, Spence, might prove helpful.

For all those reasons, we are not prepared to conclude that prosecutorial overreaching, either in its own right, or as a sub-species of the genus double jeopardy, has been made out sufficiently to constitute grounds under the Fifth or the Fourteenth Amendments for voiding the conviction of Webb in the Commonwealth court.

Accordingly, the judgment below is reversed, and the case remanded with instructions to the district court to deny the writ.

REVERSED AND REMANDED.

WIDENER, Circuit Judge, concurs in the result.

---

**8.** In that case, the relief sought is not available. *United States v. Curry*, 512 F.2d 1299, 1306 (4th Cir.1975), *cert. denied,* 423 U.S. 832, 96 S.Ct. 55, 46 L.Ed.2d 50 (1975) ("The law does not require that a trial be free of error; it only requires that the trial be fair and free of prejudice to the defendant."); *cf. Watkins v. Foster,* 570 F.2d 501, 506 n. 6 (4th Cir.1978) (Where improper cross-examination by prosecutor shown, question becomes whether it "was so

prejudicial as to deprive [defendant] of a fair trial.").

**9.** The Commonwealth insists that it had sufficient other witnesses so that, if the requested continuance had been denied, it could still have gone forward and presented enough evidence to sustain a conviction. The district judge appears not to have been impressed by that consideration, nor are we.