527 So.2d 641 (1988)
Eddie Lee KING
v.
STATE of Mississippi.
No. 57687.
Supreme Court of Mississippi.
May 11, 1988.
Rehearing Denied July 20, 1988.
Seth Wheatley, Caroline R. Moore, Greenwood, for appellant.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by Leyser Q. Morris, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, ROBERTSON and ANDERSON, JJ.
DAN M. LEE, Presiding Justice, for the Court:
This appeal presents several issues concerning application of Miss. Code Ann. § 99-19-83 (Supp. 1987) to Eddie Lee King. King was indicted for rape as an habitual offender, then tried and convicted. Following his conviction, the trial court held a separate sentencing hearing where it found beyond a reasonable doubt that King was an habitual offender. The trial court sentenced King to life without reduction or suspension and without opportunity for parole *642 or probation. King appeals only his sentencing as an habitual offender. He assigns these errors:
I. THE TRIAL COURT ERRED IN OVERRULING EDDIE LEE KING'S OBJECTION TO THE INTRODUCTION OF COPIES OF THE COMMITMENT ORDERS IN CAUSE NUMBERS 18,946 AND 19,367 OF THE CIRCUIT COURT OF LEFLORE COUNTY, MISSISSIPPI, IN THE COLLECTIVE EXHIBIT NUMBER S-1, AND IN FINDING BEYOND A REASONABLE DOUBT THAT EDDIE LEE KING, APPELLANT IN THIS CAUSE, WAS CONVICTED IN EITHER CAUSE NUMBER 18,946 OR CAUSE NUMBER 19,637 IN THE CIRCUIT COURT OF LEFLORE COUNTY, MISSISSIPPI.
II. THE TRIAL COURT ERRED IN FINDING BEYOND A REASONABLE DOUBT THAT EDDIE LEE KING HAD BEEN SENTENCED TO AND HAD SERVED A SEPARATE TERM OF ONE YEAR ON A SENTENCE IN CAUSE NUMBER 19,637 IN THE CIRCUIT COURT OF LEFLORE COUNTY, MISSISSIPPI.
III. THE TRIAL COURT ERRED IN FINDING BEYOND A REASONABLE DOUBT THAT THE OFFENSE FOR WHICH EDDIE LEE KING WAS ALLEGEDLY CONVICTED IN CAUSE NUMBER 18,946 IN THE CIRCUIT COURT OF LEFLORE COUNTY, MISSISSIPPI WAS A "CRIME OF VIOLENCE."
IV. THE TRIAL COURT ERRED IN OVERRULING EDDIE LEE KING'S OBJECTION ON THE GROUNDS OF DOUBLE JEOPARDY TO A SECOND HEARING ON THE SENTENCING PHASE IN THIS CAUSE AFTER THE PROSECUTION HAD FAILED AT THE FIRST HEARING TO ADDUCE PROOF THAT EDDIE LEE KING HAD SUFFERED ANY PREVIOUS CONVICTIONS.
We reject King's assigned errors and affirm his sentence.
The indictment in this cause alleged that Eddie Lee King was an habitual offender under Miss. Code Ann. § 99-19-83 (Supp. 1987). The two underlying felonies alleged in the indictment were:
1) an armed robbery conviction and sentence of 10 years in cause No. 18,946, rendered December 9, 1976, and
2) a conviction of burglary of a dwelling house and sentence of five years in cause No. 19,637, rendered June 15, 1981.
Both previous convictions occurred in Leflore County and the indictment alleged King served more than one year on both sentences.
On December 6, 1985, a jury convicted King of rape but failed to set punishment. Following this conviction, the trial court began a hearing on the habitual offender allegations contained in the indictment.
The prosecution introduced Lt. Lewis Grones with the identification and records division of the Greenwood Police Department. The prosecution qualified Grones as a fingerprint expert, then sought to establish King's identity as the person convicted of and sentenced for the two crimes charged in the indictment. The prosecution tried to do this by introducing fingerprint cards obtained from Greenwood Police and from Parchman; however, the prosecutor tried to accomplish this through Lt. Grones' testimony. Counsel for King objected when Grones attempted to testify that the fingerprint cards from Parchman bore "the known fingerprints of... ." The trial court sustained the objection to introduction of the fingerprint cards after Grones stated he did not take either the set of prints from Parchman or the prints taken by the Greenwood Police Department.
At this point, the prosecution moved for a continuance until such time as it could obtain the presence of the records custodian at Parchman. The trial court granted this continuance without objection from King.
The hearing resumed on December 12, 1985, at which point King objected that further proceedings violated the bar against double jeopardy. The trial court overruled the objection.
*643 The proof showed King had been convicted of armed robbery in cause No. 18,946 from Leflore County, and had served this sentence from March 9, 1977, through December 9, 1980, at which point he was paroled.
After being paroled, King was indicted for and convicted of two separate burglaries. Because of these charges, King returned to Parchman as a parole violator and began serving the remainder of his armed robbery sentence on March 23, 1981. The subsequent burglary convictions were also in Leflore County, cause No. 19,637 and cause No. 19,638. In No. 19,637, King received a sentence of five years, the sentence to run concurrently to his sentence for his armed robbery conviction, the remainder of which King was serving as a parole violator. In No. 19,638 King received a five-year sentence to run consecutively to his sentence for burglary under No. 19,637. However, No. 19,638 was not alleged in the indictment, and the trial court sustained King's objection to any proof concerning No. 19,638.
The 10-year sentence for armed robbery was completed June 24, 1983, more than two years after the June 15, 1981, judgment and sentence for burglary of a dwelling in No. 19,637.
Thus, the evidence is without dispute that following his conviction and sentence for burglary of a dwelling in cause No. 19,637 King served more than one year in Parchman. Likewise, there appears to be no dispute that King served his five-year sentence for No. 19,637 concurrently with his completion of his 10-year sentence for armed robbery.
The trial court found King to be an habitual offender and sentenced him to life without reduction or suspension, or without possibility of parole or probation.
This appeal followed in due course.

I.

Is King's Sentence Barred by Double Jeopardy?
King alleges that granting a continuance and holding a subsequent hearing violated his protection against double jeopardy.
In DeBussi v. State, 453 So.2d 1030 (Miss. 1984), this Court held that a convicted felon could not be resentenced as an habitual after the prosecution failed in its first attempt to produce sufficient evidence of defendant's habitual status. King argues from this that jeopardy attached at the habitual offender hearing, citing this language from DeBussi:
The habitual offender sentencing hearing, like the capital sentencing hearing, is itself a trial on eligibility for a harsher sentence, and therefore constitutes jeopardy.
Id. at 1033.
King correctly argues that jeopardy attaches for a bench trial when the first witness is sworn. See United States v. Martin Linen Supply Co., 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977).
In Watts v. State, 492 So.2d 1281, 1284 (Miss. 1986), this Court stated:
The double jeopardy prohibition does not mean that every time a trial aborts or does not end with a final judgment the defendant must be set free. Schwarzauer v. Miss, 339 So.2d 980, 982 (Miss. 1976).
However, if a mistrial is granted upon the court's own motion, or upon the state's motion, a second trial is barred because of double jeopardy unless there was a manifest necessity for the mistrial, taking into consideration all the circumstances. Jones v. State, 398 So.2d 1312 (Miss. 1981). Some examples of manifest necessity are: failure of a jury to agree on a verdict, Jones at 1315; biased jurors, Id.; an otherwise tainted jury, Id. at 1318; improper separation of jury, Schwarzauer, supra; when jurors otherwise "demonstrate their unwillingness to abide by the instructions of the court," Schwarzauer, 339 So.2d at 982.
Thus, there would seem to be two questions: 1) is a continuance in a bench trial sufficiently like a mistrial in a jury trial setting to invoke the Watts analysis, and, if so, 2) was there any "manifest necessity" for the mistrial.
*644 We need not reach the second question, however, for we hold that a continuance is not a mistrial in all situations, especially where, as here, the continuance is granted without defendant's objection.
The Fourth Circuit Court of Appeals addressed a similar question in Webb v. Hutto, 720 F.2d 375 (4th Cir.1983), cert. denied, 465 U.S. 1080, 104 S.Ct. 1444, 79 L.Ed.2d 764 (1984). In Webb, the court of appeals addressed a habeas corpus petition containing a claimed double jeopardy violation based on a continuance granted the prosecutor "solely because of his realization that the case could not be made against the petitioner without the testimony of at least one of the codefendants." Id. at 377.
The trial court continued the trial for five days, at which time a co-defendant provided especially damaging testimony. The Fourth Circuit affirmed, stating:
The simple, yet to us controlling, consideration is that the accused must be placed in jeopardy twice for double jeopardy to exist. It happens when the second event involves a completely new beginning, i.e., when the second proceeding takes place before a new trier of fact, whether that be a different judge or jury, or the same judge starting with a clean slate. It simply does not occur when the very same proceeding continues on after a brief postponement before the first and only trier of fact, as was the case here.
Id. at 379. Substance rather than form should control the determination of whether a trial is continued or started anew. Id. at 380.
Other courts have fashioned different analytical models to help decide this issue. See, e.g., State v. O'Keefe, 135 N.J. Super. 430, 343 A.2d 509 (1975) (resuming trial not barred unless prosecutorial neglect triggering continuance is inexcusable and the continuance is an unreasonable break in the continuity of the trial).
We lean toward accepting the rationale of the Fourth Circuit in Webb, but under either analysis we would reach the same conclusion: the resumed hearing was not barred by double jeopardy.
Here, as in Webb, it is indisputable that the subsequent proceeding was a continuation of the first hearing. When the hearing resumed on December 12, 1985, the prosecution eventually continued its examination of Lt. Grones without requalifying him as an expert.
In O'Keefe, the delay was two weeks, while in Webb the delay was only five days. The delay here was six days. This does not seem to be an unreasonable break. Since O'Keefe framed the test in the conjunctive, if the break is not unreasonable then the Court would not need to reach the neglect prong.
Of no small moment is defendant's failure to timely object to the continuance. Here, there is evidence in the record that the prosecution might have had sufficient documentation from the Department of Corrections to meet its burden without Grones' knowledge of identifying fingerprints. Thus, it seems especially inappropriate to hold the resumed hearing barred when a timely objection might have properly framed the issue for the trial court. In this light, King's failure to object can only be viewed as an acquiescence to the continuance.
This assignment of error is without merit.

II.

Did the Prosecution Prove King Had Served Two Separate Sentences?
Simply put, King's argument here is that concurrent sentences for admittedly separate crimes is insufficient under the dictates of Miss. Code Ann. § 99-19-83 (Supp. 1987), which provides:
Every person convicted in this state of a felony who shall have been charged twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced and served separate terms of one (1) year or more in any state and/or federal penal institution, whether in this *645 state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation. (emphasis added)
In Jackson v. State, 518 So.2d 1219 (Miss. 1988), this Court held that concurrent sentences for separate crimes arising out of separate incidents would support an habitual offender finding under Miss. Code Ann. § 99-19-81 (Supp. 1987). The Court stated:
The appellant contends that concurrent sentences are not "separate terms" required by the statute for sentencing as a recividist. There is no merit to this contention. The language of the statute requires simply sentencing to separate terms, specifically omitting the requirement that they must be served separately, or that they must be served at all.
As we stated in Taylor v. State, 426 So.2d 775, 779 (Miss. 1983), interpreting Miss. Code Ann. § 99-19-83:
... upon conviction, the accused, when charged that he previously was convicted of two (2) felonies, one of which constituted a crime of violence, and that he actually served one year or more on each sentence, shall be sentenced to life imprisonment without parole or probation.
[emphasis added] See also Ellis v. State, 485 So.2d 1062, 1064 (Miss. 1986) ("An essential ingredient of this section is that the defendant shall have served at least one year under each sentence.")
The question, thus, is whether serving one year or more on concurrent sentences for separate convictions amounts to serving more than one year on each sentence. We hold that it does.
Though King served his sentence for his burglary conviction concurrently with the remainder of the armed robbery sentence, the two convictions resulted from separate prosecutions arising out of separate incidents at different times. King argues that the burglary sentence lost its separate identity by being made to run concurrently with a sentence already being served. Such is not the case. Had King received a pardon on the armed robbery conviction prior to the completion of his burglary sentence, the burglary sentence would not also have ended. King merely served a part of each of his separate sentences at the same time.
Though not wholly on point, we find persuasive the reasoning of the Connecticut Supreme Court in State v. Clemons, 168 Conn. 395, 363 A.2d 33 (1975). In Clemons the Connecticut court addressed a similar attack to the imposition of its version of an habitual offender act where the defendant had been paroled in 1968, then convicted and sentenced to a term of incarceration to run concurrently with the remaining period of the 1966 incarceration.
Under Connecticut law at the time, a "third offender" was one who "has twice before been convicted, sentenced and imprisoned in a state prison or penitentiary." Id. at 408, 363 A.2d at 40. The Court upheld Clemons' sentence as a third offender, stating:
The defendant's sole basis for contending that he is not a third offender is that the concurrence of the second incarceration with the period remaining on the first sentence prevents its constituting the second of two separate imprisonments. There is no merit to this argument. Placing such a construction on the statute and its successor, 53a-40, would tend to discourage concurrent sentences. The 1966 and 1968 convictions constitute separate judgments upon each of which the defendant was required to serve a set period of imprisonment. Had the defendant been pardoned of the second offense prior to completion of his term of imprisonment, or had he received a modification of that second term, he still would have been required to serve the term meted out in the first sentence. The imposition of a concurrent sentence is not an empty act, as the defendant's argument implies. Rather, it allows the court the flexibility of setting definite periods of imprisonment that fit the particular defendant's situation, despite that number of offenses to which the sentences apply; they remain, however, separate terms of imprisonment which the *646 legislature has permitted to be served at one time.
Id. at 408-09, 363 A.2d at 40. See also State v. Robinson, 262 N.W.2d 270, 272 (Iowa 1978) (quoting Clemons). Though Connecticut apparently looks more favorably upon concurrent sentences than does Mississippi, see Miss. Code Ann. § 99-19-21 (Supp. 1987), we find this distinction not controlling in this context. King's concurrent sentence was separate and he served more than one year. This assignment of error is denied.

III.

Did the Prosecution Fail to Prove Two Prior Convictions by Competent Evidence?
The prosecution introduced copies of King's commitment papers for his previous two convictions. These were copies authenticated by Christine Houston, director of records of the Mississippi Department of Corrections.
King argues that mere copies of the commitment papers are not competent evidence under Pace v. State, 407 So.2d 530 (Miss. 1981) and DeBussi v. State, 453 So.2d 1030 (Miss. 1984).
This assignment appears to be without merit. The state points out that in this pre-Rules of Evidence case Miss. Code Ann. 13-1-77 (1972) provides that a custodian of public records may certify copies of records which shall be received in evidence as would the originals. In Pace v. State, 407 So.2d 530, 534, this Court approved introduction of the commitment papers as a substitute for the original judgment. Thus, if certified, the copies of the commitment papers should be competent evidence of King's prior convictions. Ms. Houston's certificate appears in the record at R. 24, and appears to be sufficient beyond question. This assignment of error is without merit.

IV.

Did the Prosecution Prove One of King's Previous Convictions was for a Crime of Violence?
King argues here that his conviction of armed robbery is not necessarily a conviction for a crime of violence since armed robbery can be committed without physical violence.
This Court has not heretofore held that armed robbery is a crime of violence for purposes of Miss. Code Ann. § 99-19-83 (Supp. 1987).
While this Court has yet to hold armed robbery as a crime of violence, per se, we have assumed as much in McLamb v. State, 456 So.2d 743 (Miss. 1984), where we held proof insufficient to support sentencing under § 99-19-83 because only McLamb's latest conviction, that being a conviction of armed robbery, was for a crime of violence.
In McQueen v. State, 473 So.2d 971, 973 (Miss. 1985), this Court dismissed a void for vagueness claim concerning what is a crime of violence under Miss. Code Ann. § 99-19-83. The Court cited language from numerous other jurisdictions holding that violence is synonymous with "force," and neither requires actual harm, damages or pain. Certainly, force would include robbery by display of a deadly weapon. We hold that armed robbery is a crime of violence per se, and thus his sentence as an habitual offender under Miss. Code Ann. § 99-19-83 is appropriate.

CONCLUSION
Having reviewed the record as submitted from the Circuit Court of Leflore County, and having found no error therein, King's conviction and sentence is hereby affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.