# IN THE COURT OF APPEALS 08/06/96

# OF THE

# STATE OF MISSISSIPPI

## NO. 95-KA-00312 COA

JAMES ANDRE' HENDRICKS A/K/A JAMES ANDRE HENDRICKS

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. ISADORE W. PATRICK, JR.

COURT FROM WHICH APPEALED: WARREN COUNTY CIRCUIT COURT

ATTORNEY(S) FOR APPELLANT: W. RICHARD JOHNSON

ATTORNEY(S) FOR APPELLEE:

OFFICE OF THE ATTORNEY GENERAL

BY: W. GLENN WATTS

DISTRICT ATTORNEY(S): GIL MARTIN, JOHN BULLARD

NATURE OF THE CASE: CRIMINAL - MANSLAUGHTER

TRIAL COURT DISPOSITION: CONVICTION AND SENTENCE TO A TERM OF TWENTY (20) YEARS IN THE CUSTODY OF THE MDOC AS A HABITUAL OFFENDER WITHOUT ELIGIBILITY FOR PAROLE.

BEFORE THOMAS, P.J., DIAZ, AND PAYNE, JJ.

PAYNE, J., FOR THE COURT:

James Andre Hendricks was indicted as a habitual offender on charges of the murder and armed robbery of Ruby Lee Brown. He was subsequently convicted of manslaughter and sentenced as a habitual offender to serve twenty years in the custody of the Mississippi Department of Corrections without eligibility for parole. We find that Hendricks's issues on appeal have no merit and therefore affirm.


FACTS

Hendricks was arrested and tried for the murder and armed robbery of Ruby Lee Brown. The State presented evidence showing that Hendricks had been living with Brown for seven months prior to her death. The State's evidence showed that on April 4 and 5, 1991, Hendricks and Brown argued during and after a party given for Brown's son, Michael, who had just returned from Operation Desert Storm. Michael and his wife and one-year-old child were in Vicksburg and staying with Brown. Michael testified that Hendricks and Brown argued during the party, and that Hendricks later argued with Brown on the way home from the party. After they arrived at Brown's home for the night, Michael testified that as he and his family were getting ready for bed he heard his mother scream from another room "Michael, he is stabbing me." Michael opened their bedroom door to find Hendricks holding a bloody knife and coming towards him. Michael stated that Hendricks then tried to force his way into the bedroom where Michael and his wife and child were trying to sleep. Michael testified that he and his wife held the door shut with their bodies and pushed a nail on the doorframe down to stop the door from being opened. He said that they put furniture against the door to keep Hendricks out o f the room. Michael stated that he then knocked out a window, cutting his arm in the process, to get away and to call the police. Medical evidence showed that Brown subsequently died from stab wounds to her chest that had pierced her heart and lung, and that she also suffered from lacerations to her fingers. Hendricks was later apprehended in Kansas. He moved for a directed verdict at the end of the State's case, and the court denied the motion.

Hendricks testified in his defense that he had argued with Brown, and that he had taken away a knife with which Brown had tried to attack him. During the struggle, Hendricks claimed that both he and Brown were cut, and that they both fell over a coffee table. He admitted that he must have

stabbed her during the alleged struggle over the knife, but denied that he intended to kill her. He also denied trying to force his way into Michael's bedroom or taking anything of Brown's when he left. He testified that he first went to Baton Rouge, Louisiana, before going on to Kansas. Hendricks again moved for a directed verdict at the end of his case, and the court again denied the motion. The jury found Hendricks guilty of manslaughter.

The court subsequently held a habitual offender hearing following the trial. The State presented certified documents of Hendricks's prior convictions, which were what it considered to be admissible documentary evidence. The court inquired as to whether the evidence included Act of Congress certification--a clear reference to a Mississippi Rule of Evidence 902 requirement. The State replied that the documents did not have that certification. The State requested that, if the court required that

certification, it be granted a continuance to obtain it. The court granted the continuance. At the second hearing, the State presented the documents from the first hearing along with properly certified authentication and seals from the respective California officials and courts regarding Hendricks's prior convictions. The court found that the documents submitted were sufficient to support both the habitual offender portion of the indictment, and the sentencing required in statutory section 99-19-81.

The court sentenced Hendricks as a habitual offender to a term of twenty years in the Mississippi Department of Corrections without possibility of parole. Hendricks now appeals the jury's verdict and the court's sentence.

ANALYSIS

## I. DID THE TRIAL COURT ERR BY ALLOWING THE JURY TO CONSIDER MURDER OR MANSLAUGHTER?

Hendricks contends that the evidence against him lacked sufficiency, and that he should have been granted a directed verdict. He argues that the court erred in presenting the case to the jury because the State's evidence was insufficient.

Hendricks's arguments regarding the denial of his motion for directed verdict challenge the legal sufficiency of the evidence against him. Where a defendant asserts that evidence was insufficient for conviction and therefore challenges the legal sufficiency of that evidence, the authority of an appellate court to interfere with the jury's verdict is quite limited. *Williams v. State*, 667 So. 2d 15, 23 (Miss. 1996) (citation omitted). "On appeal, this Court reviews the lower court's ruling when the legal sufficiency of the evidence was last challenged." *Tait v. State*, 669 So. 2d 85, 88 (Miss. 1996) (citing *Smith v. State*, 646 So. 2d 538, 542 (Miss. 1994)); *see also McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993) (a sufficiency challenge requires consideration of the evidence before the court when made, so that an appellate court must review ruling on the last occasion the challenge was made at the trial level). In the present case, the last time that Hendricks challenged the legal sufficiency of the evidence was when he moved for a directed verdict at the end of his case. The Mississippi Supreme Court has stated that the standard of review regarding a challenge of the sufficiency of the evidence is well established:

> [T]he [sufficiency of the] evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence consistent with [Hendricks's] guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Matters regarding the weight and credibility of the evidence are to be resolved by the jury. We are authorized to reverse only where,

with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.

*Jones v. State*, 669 So. 2d 1383, 1388 (Miss. 1995) (quoting *McClain*, 625 So. 2d at 778); *see also Tait*, 669 So. 2d at 88; *Williams*, 667 So. 2d at 23.

In the present case, the evidence was legally sufficient to find that Hendricks was responsible for Brown's death. Michael Brown testified that he saw his mother and Hendricks arguing at the party and on the way home that night. He stated that he heard them arguing at home in the next room, and that he heard his mother say that Hendricks had stabbed her. Michael also said that he opened the bedroom door to find Hendricks holding a bloody knife and coming towards him and his family. He testified that he had to hold the bedroom door shut to prevent Hendricks from entering the room where he and his family were trying to sleep. Physical evidence existed indicating that someone had tried to force their way into the bedroom through the door. Investigators found the murder weapon at a distance from Brown's house.

The State presented medical evidence that Brown had suffered cuts on her fingers indicating that she had used her hands to protect herself. The State's evidence also showed that Brown had died from four stab wounds to her chest and back. Hendricks testified that Brown first attacked him with the knife, that he grabbed the knife away from Brown, that the two struggled, and that he thought Brown had fainted. He stated that he took a bag of his possessions and left because he was scared. He admitted to fleeing, stealing a car, selling a VCR which was in the car, driving to Baton Rouge, and then hitchhiking to Kansas. Hendricks stated that he never intended to hurt Brown. Finally, he testified that he never called anyone to see if Brown was okay.

Here, the evidence consistent with the guilty verdict must be accepted as true. *Id.* Considering the elements of the crime along with all the evidence in the light most favorable to the verdict, the evidence is not such that reasonable jurors could only find Hendricks not guilty. The evidence in this case was clearly legally sufficient to support the conclusion that Hendricks fatally stabbed Brown and subsequently fled. The State's evidence clearly implicated Hendricks's involvement in Brown's death. Michael Brown testified that he had heard his mother and Hendricks arguing, heard his mother say that she was being stabbed, saw Hendricks with a bloody knife coming towards him, shut the bedroom door to protect his family, and physically held the door against Hendricks's efforts to enter the bedroom. Hendricks admitted to struggling with Brown and leaving the house, never to return or to see if she survived. We believe that the evidence was amply sufficient to support the trial court's denial of Hendricks's motion for directed verdict. The jury was properly given the opportunity to determine whether Hendricks was guilty of murder, manslaughter, armed robbery, or none of the charges against him.

## II. DID THE TRIAL COURT ERR IN SENTENCING HENDRICKS, UNDER MISSISSIPPI CODE § 99-19-81, WITHOUT ELIGIBILITY FOR PAROLE?

Hendricks argues that the State failed to meet its burden of proof of prior convictions toward proving his habitual offender status at the first habitual offender hearing. Thus he contends that the second hearing was a violation of double jeopardy. He further believes that the State's introduction at the second hearing of abstracts from the State of California as authentication of evidence of prior convictions was improper, and that the abstracts were not proper sentencing orders. Therefore, he believes that the abstracts were not official court records and not proper authentication. Finally, Hendricks contends that the State failed to produce any identifying evidence or witness, except for name identification, at the second hearing.

CONTINUANCE AND DOUBLE JEOPARDY

The Mississippi Supreme Court has stated that the decision to grant or deny a continuance is within the sound discretion of the trial court. *Jackson v. State*, 672 So. 2d 468, 476 (Miss. 1996) (citations omitted); *Atterberry v. State*, 667 So. 2d 622, 631 (Miss. 1995) (citations omitted). In the present case, Hendricks cites *Cox v. State*, 586 So. 2d 761, 767-68 (Miss. 1991), for the proposition that the State should not have a second chance at proving his status as a habitual offender. While a correct statement of the law under the facts of that case, *Cox* is simply inapplicable to the present case. The *Cox* court reversed the trial court's sentence of Cox as a habitual offender because the trial court admitted documents at the sentencing hearing that the State failed to properly certify regarding Cox's second conviction. *Id.* at 756-68. These documents were required by statute for sentencing him as a habitual offender; subsequently, only one valid conviction document was technically admitted. *Id.* The court stated that double jeopardy prevented the State from "perfecting its evidence through successive attempts." *Id.* at 768 (citation omitted).

The present case is clearly distinguishable from *Cox* on one critical point. In *Cox*, the State never requested, nor did the trial court in its discretion ever grant, any continuance. The trial court in *Cox* admitted the documentary evidence of prior convictions, only one of which was later determined to be sufficiently authenticated, and determined that Cox should be sentenced as a habitual offender. *Id.* The trial court actually *concluded* the sentencing hearing, albeit incorrectly, on the merits. If the State had been given another opportunity to present properly certified conviction evidence of Cox's second conviction at a second hearing, a double jeopardy violation would have occurred. The difference between *Cox* and the present case is clearly that in the present case the trial court did not allow the State to present the conviction evidence it possessed at the first hearing. Here the State requested, and the court granted, a continuance to allow it to properly authenticate and certify the conviction evidence it did possess. In *Cox*, the one and only sentencing hearing was concluded on the merits and not continued, while in the present case the hearing was continued to allow the State to authenticate the evidence it already possessed. The first hearing in the present case did not conclude until the end of the second hearing, while the first hearing in *Cox* clearly ended. Here, the rule against double jeopardy simply was not violated because the first habitual offender hearing did not conclude in a decision on the merits. *See* Miss. Const. art. III, § 22.

The Mississippi Supreme Court has squarely addressed the issue of double jeopardy and its relationship to a continuance of a habitual offender sentencing hearing. *King v. State*, 527 So. 2d 641,

644 (Miss. 1988). The *King* court said that double jeopardy "simply does not occur when the very same proceeding continues on after a brief postponement before the first and only trier of fact. . . ." *Id.* (quoting *Webb v. Hutto*, 720 F.2d 375, 379 (4th Cir. 1983), *cert. denied*, 465 U.S. 1080 (1984)). In *King*, the court granted a continuance at the habitual offender sentencing hearing to allow the State to obtain the presence and actual testimony of the records custodian from Parchman. *Id.* at 642. The *King* court held that the second hearing was clearly a subsequent proceeding and a continuation of the first hearing. *Id.* at 644. Moreover, the second hearing did not constitute an unreasonable break or delay in the proceedings. *Id.* Finally, the court stated that King had failed to object to the continuance and that this failure could only be viewed as acquiescence to that continuance. *Id.* The *King* court determined that King's double jeopardy argument was without merit. *Id.*

In the present case the second hearing, held eight days after the first, was clearly a continuation of the first hearing and did not cause an unreasonable delay in the proceeding. An obvious difference between *King* and the present case is the fact that King's counsel did not object to the continuance, while Hendricks clearly did object. We believe this distinction does not remotely approach grounds that justify a reversal based on Hendricks's double jeopardy argument, particularly in light of the trial court's discretion in granting a motion for continuance and in overruling an objection to that motion.

DOCUMENT AUTHENTICATION

The Mississippi Supreme Court has held that, at a habitual offender hearing, the State must prove beyond a reasonable doubt each element of a defendant's habitual offender status. *Hewlett v. State*, 607 So. 2d 1097, 1105 (Miss. 1992) (citation omitted); *see also Phillips v. State*, 421 So. 2d 476, 481 (Miss. 1982) (at a habitual offender hearing, the State must show and the trial court must determine that prior conviction records are accurate, that the records meet section 99-19-81 requirements, and that the defendant to be sentenced is in fact the person previously convicted).

Contrary to Hendricks's assertion, the State did not utilize the continuance to "obtain" evidence between the first and second hearings. The State merely needed time to obtain authentication of evidence against Hendricks that it already possessed. The authentication involved parties in California who had previously certified Hendricks's prior California convictions. This process allowed the parties certifying those records to be certified by the clerk and presiding judge of the respective superior courts of California.

Hendricks also argues that the evidence ultimately admitted at the second hearing was improper and failed to meet statutory guidelines. The *Cox* court held that, in habitual offender sentencing hearings, if an actual judgment of conviction is not introduced, then documents accorded the equivalent evidentiary weight by statute must be used. *Cox*, 586 So. 2d at 767. The court stated that the issue of what documents are afforded proper evidentiary weight are controlled by article nine of the Mississippi Rules of Evidence. *Id.* Rule 901(a) states the general rule that authentication may be established by evidence supporting a finding that the matter in question is what its proponent claims it to represent. M.R.E. 901(a). Rule 902 provides that certain documents may be admitted into evidence without extrinsic evidence of authenticity. M.R.E. 902. The *Cox* court summarized Rule 902 as follows:

> Paragraph (1) of M.R.E. 902 makes domestic public documents under seal self-authenticating. Paragraph (2) of M.R.E. 902 makes domestic public documents not under

seal self-authenticating if another public officer certifies under seal that the signer has the official capacity claimed and that the signature is genuine. Paragraph (4) of M.R.E. 902 makes certified copies of public record[s] self-authenticating if the certification complies with Paragraphs (1), (2), or (3), any Act of Congress or rule prescribed by the Supreme Court pursuant to statutory authority.

*Id.* The court stated that the certification must certify both as to the authenticity of the signature and as to the official capacity of the signor. *Id.*

In the present case and at the second hearing the State presented, and the court accepted, two separate California Abstracts of Judgment-Commitment documents and accompanying certificates of authentication of the parties certifying the records. The documents were attached with exemplifications and authentication and seals of both California courts' clerks and circuit judges. The exemplifications were further accompanied by a statement from the presiding judge of the Superior Court of California stating that the clerk, who had certified the abstracts, was at the time of certification the official clerk of that court. The official sealed documents were also certified as having been properly certified by the appropriate officials of each court. We believe that the statutory elements of section 99-19-81 and the requirements of Mississippi Rule of Evidence 902 were met, and that the State properly proved their existence at the second hearing.

NAME IDENTIFICATION

Finally, the Mississippi Supreme Court has held that the general rule regarding name identification is that "an identity between the name in a document and the name of the defendant creates a rebuttable presumption that the two people are in fact identical." *Young v. State*, 507 So. 2d 48, 49 (Miss. 1987); *see also Branning v. State*, 224 So. 2d 579, 582 (Miss. 1969) (identity of name of defendant and the person previously convicted is prima facie evidence of identity of person and, in the absence of rebutting testimony, supports finding of such identity and the presumption that defendant is one and the same person as the one previously convicted).

In the present case, the defendant's name and the name on the prior conviction documents clearly matched. The *Young* court held that an identity, or connection, between a name in a document and the defendant's name creates a rebuttable presumption that the two are one and the same. *Young*, 507 So. 2d at 49. Here, Hendricks failed to rebut that presumption by failing to introduce evidence that he was not the same person as that listed on the California documents. We believe that Hendricks's argument on this point therefore lacks merit.

CONCLUSION

We find that the trial court did not abuse its discretion in granting the continuance, and that the second hearing was not a violation of Hendricks's rights against double jeopardy. The second hearing was indisputably a continuation of the first hearing. Additionally, we believe that the State did not fail to meet its burden of proof regarding Hendricks's two prior convictions at the second sentencing hearing. Finding no error in the trial below, we affirm the jury's verdict and the court's sentence.

**THE JUDGMENT OF THE CIRCUIT COURT OF WARREN COUNTY OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS AN HABITUAL OFFENDER IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO WARREN COUNTY.**

**FRAISER, C.J., BRIDGES AND THOMAS, P.JJ., BARBER, COLEMAN, DIAZ, KING, McMILLIN, AND SOUTHWICK, JJ., CONCUR.**